UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| CAPITAL LIGHTING & SUPPLY, LLC | ) | |
| d/b/a CAPITALTRISTATE | ) | |
| 8511 Pepco Place | ) | |
| Upper Marlboro, MD 20772 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. _____** |
| | ) | **COMPLAINT** |
| KENNETH L. WIRTZ | ) | **JURY TRIAL DEMANDED** |
| 15675 Magnolia Drive | ) | |
| New Freedom, PA 17349 | ) | |
| | ) | |
| KRISTEN R. WIRTZ | ) | |
| 15675 Magnolia Drive | ) | |
| New Freedom, PA 17349 | ) | |
| | ) | |
| TK LIGHTING SUPPLY, LLC | ) | |
| 22 W. Pennsylvania Ave., Suite 300 | ) | |
| Towson, MD 21204 | ) | |
| | ) | |
| SERVE ON: | ) | |
| Resident Agent | ) | |
| Todd Sibel | ) | |
| 3506 Englemeade Rd. | ) | |
| Baltimore, MD 21208 | ) | |
| | ) | |
| MEKW, LLC | ) | |
| 15675 Magnolia Drive | ) | |
| New Freedom, PA 17349 | ) | |
| | ) | |
| SERVE ON: | ) | |
| Kristen R. Wirtz | ) | |
| 15675 Magnolia Drive | ) | |
| New Freedom, PA 17349 | ) | |
| | ) | |
| TODD SIBEL | ) | |
| 3506 Englemeade Road | ) | |

Pikesville, MD 21208                          )
                                             )
SIBEL SALES, INC.                            )
3506 Englemeade Road                         )
Pikesville, MD 21208                         )
                                             )
    SERVE ON:                     )
    Resident Agent                )
    Todd Sibel                    )
    3506 Englemeade Road          )
    Pikesville, MD 21208          )
                                             )
ADAM J. HARMON                               )
    6810 Avery Road               )
    Dublin, Ohio 43017            )
                                             )
AXIS LED GROUP, LLC                          )
5401 Westbard Ave., Unit 1501                )
Bethesda, MD 20816                           )
                                             )
    SERVE ON:                     )
    Resident Agent                )
    United States Corporation Agents, )
    Inc.                          )
    6959 Golden Ring Rd           )
    Rosedale, MD 21237            )
                                             )
VOLTURNO SOLUTIONS, LLC                      )
22 W. Pennsylvania Ave., Suite 300           )
Towson, MD 21204                             )
                                             )
    SERVE ON:                     )
    Resident Agent                )
    Todd Sibel                    )
    3506 Englemeade Rd.           )
    Baltimore, MD 21208           )
                                             )
JC SONS, LLC                                 )
414 6th Avenue, NE                           )
Glen Burnie, MD 21060                        )
                                             )
    SERVE ON:                     )
    Resident Agent                )

Christine Smith                          )
414 6th Avenue, NE                       )
Glen Burnie, MD 21060                    )
                                         )
BALTIMORE'S LIGHT SOURCE, LLC            )
414 6th Avenue, NE                       )
Glen Burnie, MD 21060                    )
                                         )
      SERVE ON:                          )
      Resident Agent                     )
      Christine Smith                    )
      414 6th Avenue, NE                 )
      Glen Burnie, MD 21060              )
                                         )
JEFFREY D. SMITH                         )
414 6th Avenue, NE                       )
Glen Burnie, MD 21060                    )
                                         )
and                                      )
                                         )
CHRISTINE A. SMITH                       )
414 6th Avenue, NE                       )
Glen Burnie, MD 21060                    )
                                         )
                   Defendants.           )
_____

## COMPLAINT

Plaintiff, Capital Lighting & Supply, LLC d/b/a CapitalTristate ("CapitalTristate"), files this Complaint against Defendants Kenneth L. Wirtz ("Ken Wirtz" or "Mr. Wirtz"), Kristen R. Wirtz (a/k/a Kristen R. Hrebik) ("Kristen Wirtz"), TK Lighting Supply, LLC ("TK Lighting"), MEKW, LLC ("MEKW"), Todd Sibel ("Mr. Sibel"), Sibel Sales Inc. ("Sibel Sales"), Adam J. Harmon ("Mr. Harmon"), AXIS LED Group, LLC ("AXIS"), Volturno Solutions, LLC ("Volturno"), JC Sons, LLC ("JC Sons"), Baltimore's Light Source, LLC ("Baltimore's Light Source" or "BLS"), Jeffrey D. Smith, and Christine A. Smith (collectively the "Defendants"), and alleges as follows:

## INTRODUCTION

1.     This case arises, in part, from Defendants' creation and operation of multiple corrupt and criminal enterprises designed to defraud Plaintiff CapitalTristate.  Over the course of at least four years, from at least 2012 through 2017, Defendants conspired and acted in concert with one another to defraud, and did in fact defraud, CapitalTristate, by, among other things, submitting inflated and fraudulent invoices and credits to CapitalTristate, stealing CapitalTristate's property/products, colluding with one another to divert CapitalTristate business away from CapitalTristate, intentionally and maliciously causing CapitalTristate's customers to breach their contracts with CapitalTristate, causing CapitalTristate to pay fraudulent invoices, causing CapitalTristate to purchase excess materials, improperly retaining CapitalTristate funds as illegal kick-backs, and retaining commissions on sales that were ultimately written-off and/or otherwise never realized by CapitalTristate.

2.     CapitalTristate brings this civil action against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 15 U.S.C. § 1961 *et seq*., to recover for

1

injuries it has suffered to its business as a direct and proximate result of Defendants' unlawful acts. CapitalTristate also brings various state law claims against Defendants, including causes of action for Breach of Duty of Loyalty, Fraud, Constructive Fraud, Negligence (Breach of Fiduciary Duty), Conversion, Unjust Enrichment, Money Had and Received, Tortious Interference with Contractual Relationships, Conspiracy, Aiding and Abetting, Respondeat Superior, and Breach of Contract.

3.      As set forth in detail below, Defendants perpetrated a variety of schemes that spanned the course of many years.  In order to avoid detection, the numerous schemes were executed by engaging in fraudulent transactions for relatively small amounts.  The cumulative effect of those transactions, however, resulted in substantial losses to CapitalTristate, totaling approximately $6 million, if not more.  As the saying goes, death by a thousand cuts.

4.      Additionally, the way in which Defendants perpetrated their fraud enabled Defendants to conceal and cover-up their wrongdoing.  Among other things, Defendants manipulated CapitalTristate's internal accounts and records which, despite CapitalTristate's reasonable diligence, prevented CapitalTristate from discovering Defendants' fraud and wrongdoing.

## **PARTIES**

5.      Plaintiff, CapitalTristate, is a limited liability company, with its principal place of business in Upper Marlboro, Maryland.  CapitalTristate also has an office in Baltimore, Maryland, which is the location where Defendant Ken Wirtz worked. CapitalTristate provides electrical products, lighting, and services to contractors, builders, and end-users in Maryland, Pennsylvania, West Virginia, District of Columbia, and Virginia.

6.      Defendant Ken Wirtz is a Pennsylvania resident.  At all relevant times, Mr. Wirtz was an Account Manager in CapitalTristate's Energy & Maintenance Service ("EMS") division

working out of CapitalTristate's Baltimore location.  Additionally, at all relevant times, Mr. Wirtz regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

7.     Defendant Kristin Wirtz is a Pennsylvania resident.  Ms. Wirtz is the wife of Defendant Ken Wirtz, and during relevant times was the co-owner of Defendant TK Lighting (a Maryland limited liability company) and the principal owner of Defendant MEKW (a Pennsylvania limited liability company).  At all relevant times, Ms. Wirtz regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

8.     Defendant TK Lighting is a Maryland limited liability company with its principal place of business in Towson, Maryland.  TK Lighting is owned and operated by Defendants Todd Sibel and Kristen Wirtz, and is in the business of selling lighting supplies to businesses and acting as a general contractor on retrofitting projects.  At all relevant times, TK Lighting regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

9.     Defendant MEKW is a Pennsylvania limited liability company with its principal place of business in New Freedom, Pennsylvania.  Upon information and belief, MEKW was formed on November 7, 2014 by Defendant Kristen Wirtz.  MEKW was used to funnel illicit kickbacks via numerous fraudulent schemes perpetuated by Defendants against Plaintiff CapitalTristate.  Prior to MEKW's formation, Defendants submitted, caused to have submitted, or conspired and/or colluded to have submitted, fraudulent invoices under the name M.E.K. Inc. and

funneled the illicit kickbacks to Defendants Ken Wirtz and Kristen Wirtz using that corporate name.

10.     Defendant Todd Sibel is a resident of Pikesville, Maryland.  Mr. Sibel is the director and resident agent of Defendants Sibel Sales and Volturno.  Additionally, Todd Sibel is co-owner of Defendant TK Lighting.  At all relevant times, Mr. Sibel regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

11.     Defendant Sibel Sales is a Maryland corporation with its principal place of business in Baltimore, Maryland.  Sibel Sales is owned and operated by Defendant Todd Sibel.  At all relevant times, Sibel Sales regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

12.     Defendant Volturno is a Maryland limited liability company with its principal place of business in Towson, Maryland.  Volturno is owned and operated by Defendant Todd Sibel. Volturno provides sales and consulting services for energy efficiency in commercial real estate. At all relevant times, Volturno regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

13.     Defendant Adam Harmon is a resident of Dublin, Ohio, and upon information and belief, was at one time, a resident of Maryland.  At all relevant times, Mr. Harmon was an agent and director of Defendant AXIS.   At all relevant times, Mr. Harmon regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

4

14.     Defendant AXIS is a Maryland limited liability company with its principal place of business in Bethesda, Maryland.  AXIS also is an Ohio limited liability company with a place of business in Dublin, Ohio.  At all relevant times, Adam Harmon was a director and agent of AXIS, a company in the business of supplying lighting products to contractors, facility managers, designers, distributors, and other lighting professionals, including to Plaintiff CapitalTristate.  At all relevant times, AXIS regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

15.     Defendant JC Sons is a Maryland corporation with its principal place of business in Glen Burnie, Maryland.  JC Sons is owned and operated by principals Jeffrey Smith and Christine Smith.  At all relevant times, JC Sons provided electrical contracting services for CapitalTristate's EMS division.  At all relevant times, JC Sons regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

16.     Defendant Baltimore's Light Source is a Maryland limited liability company with its principal place of business in Glen Burnie, Maryland.  Baltimore's Light Source is owned and operated by Defendants Jeffrey Smith and Christine Smith.  At all relevant times, Baltimore's Light Source provided electrical contracting services for CapitalTristate's EMS division. At all relevant times, Baltimore's Light Source regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

17.     Defendant Jeffrey Smith is a resident of Glen Burnie, Maryland.  At all relevant times, Mr. Smith was a principal and agent of Defendants JC Sons and Baltimore's Light Source.

5

At all relevant times, Mr. Smith regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

18.     Defendant Christine Smith is a resident of Glen Burnie, Maryland.  At all relevant times, Ms. Smith was a principal and agent of Defendants JC Sons and Baltimore's Light Source. At all relevant times, Ms. Smith regularly conducted business in the state of Maryland, and as set forth in detail herein, perpetrated, in concert with the other Defendants, numerous fraudulent schemes against Plaintiff CapitalTristate.

## JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over the parties because all Defendants systematically, regularly, and continuously conduct business in Maryland and otherwise have minimum contacts with Maryland sufficient to establish personal jurisdiction.  This Court also has personal jurisdiction over the Defendants because their contacts with Maryland resulted in injury to CapitalTristate in Maryland.  Further, this Court has personal jurisdiction over Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and 18 U.S.C. § 1965(a)-(b), (d).

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this action arises under the laws of the United States, and 18 U.S.C. § 1964(c) because this action alleges violations of the RICO Act, 18 U.S.C. § 1962.

21.     This Court also has supplemental jurisdiction over the state and common law claims asserted by Plaintiff pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims and they form part of the same case or controversy.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) and 18 U.S.C. §1965, because (a) Defendants are subject to personal jurisdiction in this judicial District, (b) Defendants AXIS, TK Lighting, Volturno, Sibel Sales, JC Sons, Baltimore's Light Source, Todd Sibel, Jeffrey Smith, and Christine Smith reside in this District, (c) Defendants conduct business in this District, and (d) a substantial part of the events, omissions, and fraudulent activity relating to all Defendants and giving rise to the claims in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

### A.     CapitalTristate and Ken Wirtz

23.     Plaintiff, CapitalTristate, is a Maryland-based company in the business of providing electrical products, lighting, and services to contractors, builders, and end-users throughout the Mid-Atlantic region of the United States.

24.     Among the numerous services CapitalTristate offers, the EMS division of the company provides a suite of products and services including consultation, lighting supplies, and project management for electrical and lighting energy-efficiency projects to property owners and others.

25.     The EMS division partners with its customers to improve the quality and efficiency of lighting, while significantly reducing building operating costs.

26.     As part of CapitalTristate's EMS division's services, it coordinates and creates professional designs, energy audits, and payback analyses, as well as offers solutions for installation of new products and disposal of existing products.

27.     Once retained, EMS provides lighting and other goods and materials for retrofitting projects and often acts as the general contractor for those projects.  Retrofitting projects entail, in part, updating depreciating lighting and electrical systems in existing buildings.

28.     The benefits of retrofitting include financial savings on energy costs and, in some cases, government incentives and rebates to companies who meet certain energy-efficiency thresholds.

29.     CapitalTristate sometimes works with brokers and outside vendors who supply business leads to the EMS division.  The brokers/outside vendors work to connect CapitalTristate to customers who will benefit from CapitalTristate's energy-retrofitting services.

30.     In addition to working with brokers, CapitalTristate also works with subcontractors to perform the installation of the electrical and lighting upgrades.

31.     CapitalTristate also purchases products and materials from manufacturers and suppliers for the retrofit jobs.

32.     On August 14, 2006, CapitalTristate hired Defendant Ken Wirtz as an Account Manager in CapitalTristate's EMS division.  Mr. Wirtz held that position until April 12, 2017, when he was terminated for intentionally defrauding and stealing from CapitalTristate.

33.     Defendant Todd Sibel at all relevant times held himself out to the public as an energy management solutions expert.  Upon information and belief, Defendant Todd Sibel was to provide leads of potential retrofitting jobs to Ken Wirtz.

34.     Defendant Ken Wirtz's preferred electrical contractors for retrofit projects were Defendant JC Sons and Baltimore's Light Source.

35.     As an Account Manager in CapitalTristate's EMS division, Ken Wirtz (a) obtained new customer leads, (b) interfaced with potential new customers regarding their retrofitting and lighting needs, (c) managed the bid process, including assisting with developing the cost analysis and ultimate price to charge the customer, (d) was the point-person on the job, interfacing with the customer and the subcontractors, (e) instructed other CapitalTristate employees on the type and

quantity of products to purchase for each job, (f) handled product inventory, (g) retained and oversaw subcontractors and suppliers, (h) reviewed and approved subcontractor and supplier invoices, and (i) instructed other CapitalTristate employees to approve invoices and to apply credits to various accounts.

36.     As an Account Manager, Ken Wirtz was afforded great trust and confidence.

**B.     CapitalTristate's Internal Investigations and Discovered Schemes**

37.     In the fourth quarter of 2015, CapitalTristate's EMS division wrote off more than $200,000.00 due to uncollectable rebates from retrofit projects.  At that time, the write-offs were believed to be the result of poor record keeping.  No wrongdoing by Defendants was suspected at that time.

38.     In mid-2016, the EMS division wrote off an additional $150,000.00 due to uncollectible utility rebates from retrofit projects.  Again, no wrongdoing by Defendants was suspected at that time.

39.     In October 2016, CapitalTristate's accounts payable team made two requests to two separate vendors to pay alleged outstanding balances totaling in the aggregate approximately $600,000.00.  The vendors denied owing the amounts.  As a result, in late 2016, CapitalTristate management conducted an internal review and audit of the EMS division (the "2016 audit").  The 2016 audit identified several concerns regarding CapitalTristate's finances, including:

- EMS budget overruns of approximately $1.2 million;

- More than $500,000 of credit memos issued to Defendant Sibel Sales that did not appear to be legitimate; and

- More than $120,000 of credit memos issued to Defendant JC Sons that did not appear to be legitimate.[1]

---

[1] Based on CapitalTristate's subsequent investigation, these overrun and credit figures are significantly higher.

40.     The initial 2016 audit revealed a projected total loss of approximately $2 million. However, as set forth below, CapitalTristate's subsequent investigation has revealed that the total loss is significantly higher.  Although the investigation is ongoing, currently CapitalTristate's loss totals approximately $6 million, if not more.

41.     Following the 2016 audit, and prompted by its results, CapitalTristate initiated a more comprehensive investigation of its EMS division in the early part of 2017 (the "2017 investigation"); that investigation is still ongoing.

42.     As part of the ongoing 2017 investigation, CapitalTristate has discovered that most, if not all, of the EMS division losses can be traced back to retrofit projects coordinated by, or otherwise involving, Defendant Ken Wirtz, in concert and coordination with the other named Defendants in this Complaint.

43.     As of the date of this filing, the 2017 investigation into the CapitalTristate EMS division has revealed approximately $6 million in losses attributable to Defendants' illicit and fraudulent activities and their various criminal enterprises.

44.     The types of illicit and fraudulent schemes carried out by Defendants that CapitalTristate has uncovered to date are as follows:

**Overbilling and Inflation of JC Sons/Sibel Sales Invoices and Kickbacks**

45.     Beginning in at least 2014 until approximately April 12, 2017 (when Ken Wirtz was terminated), and unbeknownst to Plaintiff, Defendants Ken Wirtz, Kristen Wirtz, Jeffrey Smith, Christine Smith, JC Sons, Todd Sibel, Sibel Sales, Volturno, MEKW (and prior to MEKW, M.E.K. Inc.) conspired with one another to perpetrate, acted in concert to defraud, and did perpetrate a fraudulent scheme to inflate JC Sons and/or Sibel Sales invoices.

46. Defendant JC Sons was Defendant Ken Wirtz's preferred electrical contractor for CapitalTristate's retrofit projects.  At all relevant times, Ken Wirtz hired JC Sons to provide electrical engineering services and labor for CapitalTristate's EMS retrofit jobs ("EMS Retrofitting Projects").

47. Defendants would charge CapitalTristate an inflated price for JC Sons work.

48. Specifically, the scheme was carried out as follows:

a. Ken Wirtz and Todd Sibel would communicate via email and discuss the amount to charge CapitalTristate over-and-above the amount of the JC Sons' invoices. After agreeing on the inflated price, Ken Wirtz would instruct Todd Sibel to create an invoice reflecting the inflated and fraudulent amount.

b. In accordance with Ken Wirtz's instructions, Todd Sibel would create a Sibel Sales invoice, reflecting the inflated and fraudulent amount.

c. Todd Sibel, through Sibel Sales, would then issue the inflated and fraudulent invoices to CapitalTristate via email and/or U.S. mail.

c. Ken Wirtz would approve the inflated and fraudulent Sibel Sales invoices knowing that the invoices were fraudulent.

d. CapitalTristate, unaware that the invoices were inflated and fraudulent, and at Ken Wirtz's direction, paid the invoices and sent the payment via wire transfer and/or U.S. mail.

49. With respect to at least some of the EMS retrofit projects, Todd Sibel and/or Ken Wirtz instructed JC Sons to submit its invoices for the work performed on those jobs to Volturno.

50. In those cases, JC Sons followed Todd Sibel's and/or Ken Wirtz's instructions and submitted via email its invoices to Volturno.

51. Instead of Volturno sending the JC Sons invoices directly to CapitalTristate for payment, Defendants Todd Sibel (who owns both Volturno and Sibel Sales) and Ken Wirtz would inflate the JC Sons invoices and then Sibel Sales (not Volturno) would submit the new inflated invoices to CapitalTristate for payment.

11

52.     Upon information and belief, Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Volturno, Sibel Sales, JC Sons, Jeffrey Smith, and Christine Smith were using Volturno as an additional means for creating confusion and concealment of the schemes.

53.     Plaintiff CapitalTristate was unaware that the charges on the invoices were inflated or that the Defendants identified in paragraph 45 were acting in concert to fraudulently bill CapitalTristate for JC Sons' work on the EMS retrofitting projects.

54.      Plaintiff CapitalTristate approved and paid the invoices by, or at the direction of, Defendant Ken Wirtz.

55.     Upon information and belief, when Sibel Sales received the payment for the inflated invoices from CapitalTristate, Todd Sibel would pay JC Sons the amount of the original JC Sons invoice.

56.     The remaining funds (the difference between the JC Sons original invoice amount and the inflated invoice amount submitted to and paid by CapitalTristate) were split between Defendants Ken Wirtz, Kristen Wirtz and Todd Sibel as impermissible kickbacks.

57.     Todd Sibel received his share through Sibel Sales, and generally distributed Mr. and Ms. Wirtz's share of the kickbacks through Defendant MEKW (Kristen Wirtz's company) or M.E.K. Inc.

58.     Prior to November 2014, Defendants Ken Wirtz and Kristen Wirtz would issue fictitious invoices to Sibel Sales for EMS retrofit projects using the company name M.E.K. Inc. On November 7, 2014, Kristen Wirtz formed MEKW, and began creating fictitious MEKW invoices.  The M.E.K. and MEKW invoices referenced CapitalTristate EMS retrofit projects.

59.     Neither M.E.K. nor MEKW were authorized vendors or contractors for CapitalTristate, and therefore, there was no reason for either entity to have invoices referencing CapitalTristate EMS retrofit projects.

60.     The M.E.K./MEKW fake invoices provided documentation for Sibel Sales to pay Ken Wirtz and Kristen Wirtz kickbacks.

61.     Ken Wirtz admitted during a March 29, 2017 interview with CapitalTristate that MEKW was created to have a source for the "income" (aka kickbacks) that he and Defendant Kristen Wirtz received from Todd Sibel and/or Sibel Sales.

62.     Upon information and belief, on several occasions, Defendant Todd Sibel distributed Ken Wirtz's and Kristen Wirtz's share of the kick-back payments directly to Ken Wirtz and Kristen Wirtz, rather than through M.E.K. or MEKW.

63.     The following are examples of the above-described fraudulent scheme:

a)      On June 30, 2014, Defendant Ken Wirtz sent Defendant Todd Sibel an email referencing a job, stating "Send me invoice for 1K"  Attached to the email was JC Sons' invoice billed to Defendant Volturno, totaling $375.00. Thereafter, Defendant Sibel Sales issued an invoice related to that same job to CapitalTristate via email for $1,000.  On August 11, 2014, CapitalTristate paid the invoice via check.  Todd Sibel, through Volturno, forwarded the $375.00 to JC Sons, and then kept $210.00 and sent Mr. and Ms. Wirtz's share totaling $415.00 to M.E.K. Inc.

b)      On July 28, 2014, Defendant Ken Wirtz sent an email to Defendant Todd Sibel, stating "Bill me for $3,500.00."  Attached to the email was JC Sons' invoice to Volturno in the amount of $2,550.00 for the project.  Sibel Sales submitted an invoice to CapitalTristate totaling $3,500.00 referencing the same project listed on JC Sons Invoice.  On November 3, 2014, CapitalTristate paid that invoice via check.  M.E.K. Inc. invoiced Sibel

13

Sales $250.00 for this job, instructing that checks be made payable to Kristen Wirtz.

c)  On August 18, 2014, Defendant Ken Wirtz sent an email to Todd Sibel referencing a particular job, stating "Bill 1600 spilt [sic] 800." Attached to that email was JC Sons invoice to Volturno for that job in the amount of $800.00. On August 19, 2014, Todd Sibel sent an email to Ken Wirtz relating to that same job, attaching a Sibel Sales invoice in the amount of $1,600.00. CapitalTristate paid the invoice via check.

d)  On August 18, 2014, Defendant Ken Wirtz emailed Defendant Todd Sibel referencing an invoice, stating: "Bill for $3,200.00. Split 1,000.00 ok." Attached to that email was JC Sons' invoice billed to Volturno for $2,200.00. Thereafter, Sibel Sales issued an invoice to CapitalTristate for $3,200.00, referencing the same job. On November 1, 2014, CapitalTristate paid the invoice via check. Defendant Todd Sibel, through Volturno, forwarded the $2,200.00 to JC Sons, and then kept $450.00 and sent Mr. and Ms. Wirtz's share in the amount of $550.00 to M.E.K. Inc.

e)  On November 26, 2014, Kristen Wirtz emailed Todd Sibel regarding a retrofit project. The body of the email stated "Please make payable to MEKW, LLC. Thank you." Todd Sibel forwarded the email to Ken Wirtz, stating: "Labor bill from Jeff is $1950  Have a margin bill from you for $1,800 Sibel sales billed $3,500 for labor per your instructions  Need a bill for margin from you to cover the difference of at least $250 if not more." Ken Wirtz responded, "Send bill for 350.00." This example illustrates that Ken Wirtz directed Todd Sibel to bill more than necessary to cover the labor performed by Jeffrey Smith (JC Sons). Todd Sibel had indicated the amount previously billed to CapitalTristate was short $250. Ken Wirtz directed Todd Sibel to bill an additional $350.00.  Sibel Sales invoiced CapitalTristate in the amount of $3,500 for the job. On January 5, 2015, CapitalTristate paid the Sibel sales invoice via check.

14

64.     Additionally, as part of the fraudulent scheme of overbilling CapitalTristate, Todd Sibel, through Sibel Sales, and at the direction of and in concert with Ken Wirtz, invoiced CapitalTristate for alleged labor that Ken Wirtz performed on non-CapitalTristate jobs.

65.     In a March 29, 2017 written signed statement, Ken Wirtz admitted that CapitalTristate should not have been invoiced for the labor he allegedly performed when he was supposed to be working for, and was already being paid by, CapitalTristate.

66.     In that same March 29, 2017 written signed statement, Ken Wirtz further admitted that Sibel Sales paid him approximately $100,000 for the alleged labor.  Specifically, Ken Wirtz stated:

> Additionally, I made an arrangement with [Todd] Sibel where he paid me (through his company (Sibel Sales)) approximately $100,000.  This was in return for the labor I performed on the jobs that my company was contracted for . . .. I knew it was extremely unethical to accept payment for labor performed during normal business hours when I should have been working for [CapitalTristate].

67.     The payments made by Sibel Sales to Ken Wirtz for the alleged labor was funded by CapitalTristate through its payment of the inflated and/or fraudulent Sibel Sales invoices as described above.

68.     At all times Defendants used electronic mail and/or U.S. mail to communicate, conspire, and carry out their fraudulent invoicing scheme.

69.     At all times Defendant Ken Wirtz and others took affirmative action to conceal the above fraudulent conduct from CapitalTristate.

70.     At no time did CapitalTristate have knowledge of, nor could it have discovered with ordinary diligence, the fact that Defendants were inflating the invoice amounts.

71.     The following diagram illustrates the above scheme:



**Inflated Pricing of Products Sold by AXIS to CapitalTristate and Causing CapitalTristate to Order Excess Products**

72.     Plaintiff CapitalTristate purchases products from various companies for use on its EMS division's retrofit projects.

73.     One of the companies that CapitalTristate would purchase lighting supplies from was Defendant AXIS.

74.     Defendant Adam Harmon is the National Director, Senior Account Manager, and agent of Defendant AXIS.

75.     Defendants AXIS, Adam Harmon, Todd Sibel, Sibel Sales, Ken Wirtz, Kristin Wirtz, and TK Lighting conspired with one another to perpetrate, acted in concert to defraud, and

16

did perpetrate a fraudulent scheme against CapitalTristate by inflating the prices of products sold by AXIS to CapitalTristate and causing CapitalTristate to purchase excess products from AXIS to increase the amount of their kickbacks.

76.     To perpetuate this fraudulent scheme, Adam Harmon, Ken Wirtz, and Todd Sibel created an inflated price list ("CapitalTristate Price List") for products typically used and purchased by CapitalTristate for the EMS division's retrofit projects.

77.     The inflated CapitalTristate Price List was created exclusively for enabling AXIS to overcharge CapitalTristate, and for Todd Sibel, Kristen Wirtz, and TK Lighting to receive kickbacks on that overpayment.

78.     Upon information and belief, at the direction of Ken Wirtz, the CapitalTristate Price List was emailed to other CapitalTristate sales personnel to use when purchasing product from AXIS.

79.     Beginning in 2015 and continuing until Ken Wirtz was terminated in 2017, Defendant Ken Wirtz, Adam Harmon, and AXIS would provide CapitalTristate with the price quotes for the products from AXIS using the CapitalTristate Price List.

80.     After the quote was approved and CapitalTristate agreed to purchase the products from AXIS, Defendants Adam Harmon, through AXIS, submitted to CapitalTristate for payment the AXIS invoices containing the inflated prices from the CapitalTristate Price List.

81.     Once submitted to CapitalTristate, Ken Wirtz would approve the AXIS invoices knowing that they contained inflated prices for the products. CapitalTristate, without knowledge and having no reason to suspect that the invoices contained inflated prices, would then pay the invoices.

82.     By knowingly creating an inflated price list, and knowingly approving for payment the AXIS invoices containing the inflated prices, Ken Wirtz failed to act in his employer CapitalTristate's best interest.   Instead, Ken Wirtz intentionally and with ill motive set and approved prices higher than what CapitalTristate otherwise could have obtained absent the fraudulent scheme.

83.     The AXIS fraudulent scheme was documented in a contract, and carried out and documented further in emails.

84.     For example, on July 30, 2015, Todd Sibel emailed Adam Harmon, stating that he could arrange for CapitalTristate to purchase product from AXIS and open the opportunity for AXIS to do business with Sonepar.   Todd Sibel further stated that he wanted to discuss compensation.  Mr. Harmon responded on July 31, 2015, stating "You can add whatever you want to the cost of it and I will pay you that in commissions once payments are paid in full."

85.     On September 28, 2015, Adam Harmon sent an email to Todd Sibel, with a copy to Kristen Wirtz at a TK Lighting email address, explaining how the kickbacks would work between AXIS and TK Lighting.  Specifically, the email states Todd Sibel, Kristen Wirtz, and/or TK Lighting would receive 5% of the original invoice price, plus they would split with Adam Harmon 50/50 the amount charged over the original invoice price.

86.     In 2015, Todd Sibel and Adam Harmon negotiated a contract whereby TK Lighting (a company owned by Todd Sibel and Kristen Wirtz) would become an independent contractor for AXIS.   Pursuant to the terms of the contract, TK Lighting would receive commissions (aka kickbacks) from AXIS on all purchases from CapitalTristate.

87.     The contract specified that TK Lighting would receive 5% of the total product price plus 50% of the Additional Markup of a product.  "Additional Markup" was defined as "the amount

18

paid to Company [i.e., AXIS] for a product which is in excess of the then current price of such product as contained in the standard parts and pricing charts utilized by Company internally in its business[.]"

88.     Upon information and belief, Ken Wirtz knowingly approved "Additional Markup" on products that CapitalTristate would purchase from AXIS because he knew his wife, Kristen Wirtz, as co-owner of TK Lighting, would receive commissions/kick-backs on the sales.

89.     Between September 22, 2015 and May 9, 2016, there were at least eight TK Lighting invoices totaling $51,668.47 billed to AXIS for kickbacks on the CapitalTristate purchases.

90.     By way of example, on January 23, 2016, AXIS issued an invoice to CapitalTristate for a purchase order in the amount of $97,668.00.  On that invoice are handwritten notes believed to be from Todd Sibel instructing Kristen Wirtz to bill Adam $20,859.50 and $2,256.15 (for a total of $23,115.65).  On February 26, 2016, TK Lighting issued an invoice to Adam Harmon referencing the same purchase order in the amount of $23,115.65.

91.     On March 29, 2017, Ken Wirtz executed a written statement wherein he admitted his involvement in the fraudulent scheme.  Specifically, he stated:

> During my employment Todd Sibel and I made an agreement that he could inflate the pricing on invoices my company received.  These invoices would be sent from Axis LED Group.  While I do not have the exact amount that these invoices were inflated by, I do know that my company was invoiced for thousands of dollars more than they should have been.  I knowingly approved these inflated invoices from Axis LED Group for payment to Sibel even though I knew it was wrong to do so. I did not receive consent from anyone in my company to do this.

92.     The following diagram illustrates the above scheme:



93.     In addition to the above scheme, Defendants AXIS, Adam Harmon, Todd Sibel, Sibel Sales, Ken Wirtz, Kristin Wirtz, and TK Lighting also ordered and/or caused CapitalTristate to purchase products that were not needed for CapitalTristate jobs ("excess products").

94.     The purpose for the ordering of excess products was to increase Defendants' kickbacks, increase Ken Wirtz's commissions, resell the products, and/or use the products on a non-CapitalTristate job.

95.     By way of example, in April 2016, Defendants knowingly ordered excess product from AXIS for an EMS project.

96.     Upon physical inspection of that project, CapitalTristate discovered that $13,732.38 of product ordered from AXIS and shipped to the project location was neither needed for nor installed at that job.

### Fake JC Sons and Baltimore's Light Source Invoices and Credits

97.     Defendants Ken Wirtz, Todd Sibel, JC Sons, Jeffrey Smith, and Christine Smith conspired with one another to perpetrate, acted in concert to defraud, and did perpetrate a fraudulent scheme against CapitalTristate by creating and submitting fake JC Sons invoices and credits to CapitalTristate.

98.     Beginning in at least as early as June 2015 and continuing until June 2016, Defendants Ken Wirtz, Todd Sibel, and Kristen Wirtz created fictitious invoices purporting to be from JC Sons for alleged work that it performed on CapitalTristate retrofitting jobs and submitted those fake invoices to CapitalTristate for payment.

99.     Defendants Ken Wirtz, Todd Sibel, and others took affirmative steps to conceal the fraudulent conduct.

100.    CapitalTristate had no reason to suspect, and did not suspect, that the invoices were fake.

101.     At Ken Wirtz's direction, CapitalTristate paid the fake invoices.

102.    Defendants JC Sons, Jeffrey Smith, and Christine Smith received payment from CapitalTristate for the amounts billed on the fake invoices.

103.    Instead of returning the money to CapitalTristate or inquiring about the payment, JC Sons, Jeffrey Smith, and Christine Smith kept a portion of the money and forwarded the remainder to Todd Sibel.

104.    The above fraudulent scheme is documented in emails.  By way of example only, on June 12, 2015, Ken Wirtz instructed Jeffrey Smith to issue a check for $8,460.00 to Todd Sibel and to apply the balance of the CapitalTristate payment from one invoice to another.

105.    On April 26, 2017, Defendant Christine Smith was shown numerous invoices that purported to be from JC Sons.  Ms. Smith confirmed that the overwhelming majority of the invoices shown to her were fake and not invoices that were issued by JC Sons to CapitalTristate. Ms. Smith initialed the fake invoices.

106.    Christine Smith gave a signed written statement on April 26, 2017.  In that statement, Ms. Smith stated:

> When I first received payment from Capital Lighting & Supply, LLC on these fictitious invoice numbers, Ken Wirtz instructed me on which original JC Sons Electric, LLC invoices to apply the payments to.  Ken Wirtz did not provide much detail about these unusual or fictitious invoice numbers but it was explained that it was a faster way to get everyone paid.  These unusual or suspicious invoice numbers started appearing on Capital Lighting & Supply, LLC statements that we received in 2016 and possibly 2015.  As time went on these fictitious or unusual invoices continued to come in from Capital Lighting & Supply, LLC and I simply started to apply the payments to the oldest JC Sons Electric, LLC invoices.

107.    Thus, Ms. Smith, Mr. Smith, and JC Sons knew that the payments they were receiving from Plaintiff were based on fictitious invoices, but they did not return the money or contact CapitalTristate.

108.    Also in the April 26, 2017 signed written statement, Jeffrey Smith and Christine Smith admitted that Ken Wirtz instructed them to write checks payable to Todd Sibel with specific dollar amounts, and to leave the checks in JC Sons' mailbox and Ken Wirtz would pick them up for Mr. Sibel.

109.    Ms. Smith issued the checks to Todd Sibel and put them in her mailbox as instructed.

110.    On at least two occasions, Ken Wirtz instructed Jeffrey Smith to issue checks payable to Ken Wirtz in specific dollar amounts and that he would pick up those checks from JC Sons' mailbox.

111.    Mr. and/or Ms. Smith issued the checks to Ken Wirtz as instructed.

112.    In her April 26, 2017 statement, Christine Smith states that she understood that Ken Wirtz's instructions regarding issuing checks to him and Todd Sibel were "suspicious or unethical," but that "Jeff Smith and I … were under the impression that if we did not work with the request of Ken Wirtz and Todd Sibel, that the retrofit jobs they provided us with may stop coming and Capital Lighting & Supply, LLC provides approximately 50% of our annual income."

113.    Notwithstanding that Jeffrey Smith, Christine Smith and JC Sons knew that Ken Wirtz and Todd Sibel were committing a fraud against CapitalTristate, they knowingly participated in the fraud for their own financial gain.

114.    Upon information and belief, Jeffrey Smith, Christine Smith, and JC Sons also directly submitted fraudulent JC Sons invoices to CapitalTristate.

115.    Based on CapitalTristate's investigation, between 2015 and 2016, there were a total of 170 fraudulent JC Sons invoices totaling approximately $1.1 million.

116.    As of the date of the filing of this Complaint, CapitalTristate has paid approximately $1.4 million to JC Sons.

117.    The following diagram illustrates the above scheme:



118.    In addition to the fake invoices seeking payment from CapitalTristate, there also were fake invoices from JC Sons submitted to CapitalTristate as credits.

119.    Based on CapitalTristate's investigation as of the date of the filing of this Complaint, CapitalTristate has identified 27 JC Sons invoices representing credits recorded in the CapitalTristate payable system totaling approximately $393,000.00.    CapitalTristate's investigation revealed additional JC Sons invoices representing credits that were not recorded in its payable system.

120.    The fraudulent credit invoices were submitted to cover up the various fraudulent schemes being perpetrated by Defendants.

121.    The following diagram illustrates the above scheme:

**Ken Wirtz, Kristen Wirtz,
Todd Sibel, Sibel Sales**

Defendants create
fake JC Sons invoices
representing credits
and submit them to
Plaintiff

**CapitalTristate**

Credits applied to
outstanding JC Sons
accounts receivable

122.    In addition to the fake JC Sons invoices, from at least as early as June 2016 to February 2017, Ken Wirtz, Todd Sibel, Jeffrey Smith, Christine Smith, JC Sons, and Baltimore's Light Source defrauded CapitalTristate by creating and submitting fake Baltimore's Light Source invoices to CapitalTristate.

123.    On July 26, 2016, there were email communications between Ken Wirtz, Jeffrey Smith, Christine Smith, and Melissa Masino (a JC Sons' and/or a Baltimore's Light Source employee) stating that Ken Wirtz was establishing Baltimore's Light Source as a CapitalTristate vendor.  Baltimore's Light Source is a company owned by Jeffrey Smith and Christine Smith.

124.    Upon information and belief, Ken Wirtz wanted Baltimore's Light Source as a CapitalTristate vendor because CapitalTristate had stopped paying JC Sons' invoices on June 15, 2016 due to the excessive credits.

125. After establishing Baltimore's Light Source as a CapitalTristate vendor, Ken Wirtz instructed Jeffrey Smith, Christine Smith, and JC Sons to issue fraudulent invoices purportedly from Baltimore's Light Source.

126. Defendants Christine Smith, Jeffrey Smith, and JC Sons knew that it was fraudulent to submit the Baltimore's Light Source invoices to CapitalTristate, but did it anyway. Indeed, Christine Smith admitted during an interview with CapitalTristate on April 26, 2017 that whenever Ken Wirtz directed her to send a Baltimore's Light Source invoice to CapitalTristate, she would add the letter "K" at the end of the invoice number.

127. In addition to the Baltimore's Light Source invoices being generated by Christine Smith, Jeffrey Smith, and JC Sons, Defendants Ken Wirtz and Todd Sibel created fake Baltimore's Light Source invoices and submitted them to CapitalTristate.

128. As of the time of the filing of this Complaint, CapitalTristate has discovered 49 fraudulent Baltimore's Light Source invoices, totaling approximately $543,000.00, and 8 invoices for credit, totaling over $94,000.00.

129. Defendants Ken Wirtz, Todd Sibel, Christine Smith, Jeffery Smith, JS Sons, and Baltimore's Light Source took action to conceal the fraud.

130. CapitalTristate had no reason to suspect, and did not suspect, that the invoices were fraudulent.

131. Unaware that the Baltimore's Light Source invoices were fraudulent, CapitalTristate – at Ken Wirtz's direction – paid the invoices.

132. The following diagram illustrates the above scheme:



**Fake Sibel Sales Credits Submitted to CapitalTristate**

133.    Defendants Ken Wirtz, Todd Sibel, and Sibel Sales conspired with one another to perpetrate, acted in concert to defraud, and did perpetrate a fraudulent scheme against CapitalTristate by creating and submitting fake credits to CapitalTristate.

134.    Based on CapitalTristate's investigation and information known to it as of the time of the filing of this Complaint, the fake Sibel Sales credits began in at least 2014 and continued through at least August 2016, totaling in excess of $620,000.00.

135.    Ken Wirtz would often instruct CapitalTristate accounting employees to use the Sibel Sales credits to clear accounts receivables on various jobs.

136.    The purpose of the credit scheme was to conceal the various fraudulent schemes and the financial losses suffered by CapitalTristate.

137.    The following diagram illustrates the above scheme:

27



### TK Lighting Billed Customers for CapitalTristate Jobs

138.    Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting conspired with one another to perpetrate, acted in concert to defraud, and did perpetrate a fraudulent scheme against CapitalTristate by diverting CapitalTristate's customers' payments to TK Lighting. Defendants perpetuated this scheme as follows:

- CapitalTristate would obtain a new customer for a retrofitting job.

- Ken Wirtz would advise the customer that TK Lighting (his wife's company) was the general contractor for the project.

- Defendants Ken Wirtz, Todd Sibel, and Kristen Wirtz then conspired and acted in concert to have TK Lighting invoice the customer for the CapitalTristate job.

- CapitalTristate also would receive and pay invoices for product and labor installed and performed on those projects, but because of the above scheme, would never receive payment from the customer.

139.     This scheme was documented in email communications and invoices.  By way of example only, on December 10, 2015, Ken Wirtz emailed Todd Sibel informing him of a new EMS retrofit account and project located in Baltimore, Maryland.

140.     On January 19, 2016, Todd Sibel emailed Kristen Wirtz, instructing Ms. Wirtz to create a TK Lighting invoice for the same project, in an amount of $15,000.  The email also noted that the invoice was for the initial deposit for the lighting retrofit project, with a total net project cost of $74,384.47.

141.     On January 19, 2016, Todd Sibel emailed a TK Lighting invoice to CapitalTristate's customer, totaling $15,900.00 (the $15,000.00 deposit, plus tax).

142.     On October 27, 2016, Todd Sibel emailed Kristen Wirtz, attaching an invoice to TK Lighting totaling $6,000.00 for that project, and in the body of the email, instructing Ms. Wirtz to issue a check to Sibel Sales for $6,000.

143.     On October 31, 2016, Kristen Wirtz prepared a TK Lighting invoice for $65,000.00 and submitted it to CapitalTristate's customer, which, upon information and belief, CapitalTristate's customer paid to TK Lighting.

144.     The above-referenced retrofit project was secured by CapitalTristate, and CapitalTristate spent approximately $130,000 in products and labor for the job, but, because of the fraudulent scheme, it was never paid by the customer.

145.     The following diagram illustrates the above scheme:



### Over Ordering of Products for Use on Non-CapitalTristate Jobs

146.    Upon information and belief, Defendants Ken Wirtz, Todd Sibel, Kristen Wirtz, TK Lighting, Jeffrey Smith, Christine Smith, JC Sons, and Baltimore's Light Source conspired with one another to perpetrate, acted in concert to defraud, and did perpetrate a fraudulent scheme by overordering product for CapitalTristate Retrofit Projects and using that excess product on TK Lighting projects (or other non-CapitalTristate jobs).

147.    Upon information and belief, throughout his tenure as Account Manager, Defendant Ken Wirtz would instruct CapitalTristate personnel to order more product than necessary for CapitalTristate's EMS retrofit projects.  CapitalTristate was unaware that the order quantities were larger than were necessary.

148.    Upon information and belief, Ken Wirtz would deliver, or cause to be delivered, the excess products to TK Lighting job sites (or other non-CapitalTristate job sites).

149.     Upon information and belief, TK Lighting (or others) would use the products on its jobs without paying for the products, and the customers would pay TK Lighting (or others) for the products, and not CapitalTristate.

150.     Because TK Lighting (or others) never purchased the products in the first instance, the customer's payment for the products was a windfall to Defendants TK Lighting, Todd Sibel, Kristen Wirtz, Ken Wirtz, Jeffrey Smith, Christine Smith, JC Sons, and Baltimore's Light Source.

151.     Upon information and belief, the excess product was later delivered to a non-CapitalTristate job site and sold to a non-CapitalTristate customer for installation by JC Sons or Baltimore's Light Source.

152.     Defendants Ken Wirtz, Todd Sibel, Kristen Wirtz, TK Lighting, Jeffrey Smith, Christine Smith, JC Sons, and/or Baltimore's Light Source did not pay CapitalTristate for the excess product.  Nor did the same Defendants return the excess product to CapitalTristate.

153.     The following diagram illustrates the above scheme:



31

## Ken Wirtz's Commission Scheme

154.    In addition to his salary, Ken Wirtz was entitled to commissions on the sales that he generated.

155.    Commissions are based on gross margin (that is, total sales minus cost of goods sold).  For every dollar of gross margin, Ken Wirtz would get twelve and a half (12.5) cents in commission.

156.    If sales were returned, written-off, or otherwise unrealized by the company, the commissions on those sales were not to be paid.  In other words, Ken Wirtz was not entitled to retain commissions on sales that CapitalTristate never actually completed.

157.    Ken Wirtz devised a scheme whereby the write-offs would be written off in a way which did not impact his commission or would be kited to a newer account leading to a future loss that CapitalTristate has taken or will have to take.

158.    Between 2012 and 2017, Ken Wirtz was paid $832,000.00 in commissions for EMS jobs, mainly retrofit jobs.  Ken Wirtz was paid on gross margin from retrofitting jobs of $4.5 million.  The gross margin on sales actually realized by the company after considering Ken Wirtz's fraudulent schemes was approximately $1.5 million on these jobs.  As a result, Ken Wirtz received approximately $500,000 more in commissions than he was entitled to receive.  Stated differently, CapitalTristate over-paid Ken Wirtz hundreds of thousands of dollars in commissions on unrealized sales.

159.    Because of the way in which Mr. Wirtz effectuated the commission scheme, other CapitalTristate employees working on Mr. Wirtz's accounts also received commissions they should not have received.  Mr. Wirtz's scheme caused CapitalTristate to pay other employees in Mr. Wirtz's group approximately $150,000.00 in commissions that should not have been paid.

32

### The Cover-Up and Concealment

160.   At all times, Defendants actively concealed and covered-up their numerous fraudulent schemes from CapitalTristate.

161.   The way in which Defendants perpetrated their fraud enabled Defendants to conceal and cover-up their wrongdoing.

162.   By way of example only, Defendants manipulated CapitalTristate's internal accounts and records which, despite CapitalTristate's reasonable diligence, prevented CapitalTristate from discovering Defendants' fraud and wrongdoing.

163.   By way of further example: Defendants (1) created and submitted fake credits to CapitalTristate to reduce CapitalTristate's accounts receivable, (2) created, without CapitalTristate's knowledge, an inflated price list for AXIS products, and (3) entered into various agreements between and among themselves, and without CapitalTristate's knowledge or approval, to conceal their fraudulent schemes and cover-up financial losses incurred by Plaintiff CapitalTristate, and performed accounting and bookkeeping functions to disguise the fraud.

164.   Defendants' schemes were devised to conceal, and did conceal, Defendants' fraudulent and illegal activity, which enabled Ken Wirtz and the other Defendants to perpetrate the numerous fraudulent schemes without CapitalTristate's knowledge or suspecting any wrongdoing.

165.   Defendants' schemes made it appear to CapitalTristate that the various EMS retrofitting jobs were profitable, when in fact they were not.

166.   Because, among other things, CapitalTristate's records revealed that the various EMS retrofitting jobs were profitable, CapitalTristate had no reason to suspect, and did not suspect,

that Defendants were engaged in the fraudulent activity and other wrongdoing set forth in this Complaint.

167.     At all times, CapitalTristate exercised reasonable diligence in protecting its rights.

## CAUSES OF ACTION

### COUNT I
### RICO, 18 U.S.C. § 1962(c)
**(Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, MEKW, TK Lighting, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith)**

168.     The allegations contained in paragraphs 1 through 167 are incorporated by reference as if set forth fully herein.

169.     Plaintiff, CapitalTristate, is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

170.     Each Count I Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (c).

171.     The Count I Defendants formed an association-in-fact with each other, constituting an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (c), which at all relevant times operated separately and distinct from the Count I Defendants, and whose activities were engaged in and/or affected interstate commerce.

172.     The enterprise and fraudulent schemes affected interstate commerce in that money crossed state lines (including, but not limited to, from Maryland to Pennsylvania), the retrofitting jobs occurred in multiple states in the Mid-Atlantic, products were transmitted interstate, and the communications in furtherance of the fraudulent schemes (including communications directing the creation of fraudulent invoices) occurred interstate.

173.     The Count I Defendants were each associated with the enterprise and participated in its management and/or operation by directing its affairs and/or by conducting business with each

34

other and by participating and assisting in the fraudulent schemes described herein to illegally profit at CapitalTristate's expense.

174.   The Count I Defendants agreed to and did conduct and participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity under 18 U.S.C. §§ 1961(1)(B), 1961(5), and 1962(c), including:

a)   Multiple acts of mail fraud in violation of 18 U.S.C. §1341 as set forth herein;

b)   Multiple acts of wire fraud in violation of 18 U.S.C. § 1343 as set forth herein; and

c)   Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314 as set forth herein.

175.   The Count I Defendants' use of the mails and wires to transmit documents and transfer funds in violation of 18 U.S.C. §§ 1341 and 1343, as described in this Complaint, occurred uniformly and consistently during the existence of the enterprise.

176.   The Count I Defendants' interstate transporting of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314, as described in this Complaint, occurred uniformly and consistently during the existence of the enterprise.

177.   This association-in-fact enterprise had a common purpose, which was to charge CapitalTristate inflated and illegal fees, to defraud CapitalTristate out of money, property and business, to give effect to the fraudulent schemes described herein, and to illegally profit from that activity at the expense of CapitalTristate.

178.   The Count I Defendants developed and agreed upon the fraudulent schemes described herein with the specific intent to deceive and defraud CapitalTristate.

179.   Each Count I Defendant participated in the fraudulent and racketeering activity willfully and with actual knowledge that the conduct was illegal.

35

180. Each Count I Defendant had a substantial and distinct role in the fraudulent schemes and racketeering activity.

181. The association-in-fact enterprise was established for an economic motive and has continued as a unit for years.

182. Pursuant to and in furtherance of their fraudulent scheme, the Count I Defendants committed multiple related and continuous acts of fraud including:

- Creating, using, and sending via mail and wire fraudulent invoices to defraud CapitalTristate about the true value of the goods and services CapitalTristate was purchasing;

- Agreeing to use and using deceptive procedures that caused CapitalTristate to pay inflated and fake invoices, order excess inventory, lose customers, and lose money on its jobs;

- Receiving and retaining illegal payments/kickbacks funded by CapitalTristate pursuant to the fraudulent invoices;

- Creating and/or directing others to create fraudulent purchase orders to have excess goods shipped to CapitalTristate with the intent to steal, and stealing, the excess inventory for use on non-CapitalTristate jobs;

- Creating and submitting invoices via mail and wire to CapitalTristate's customers and implementing processes and procedures that enabled the Count I Defendants to defraud CapitalTristate's customers into believing that Defendants (not CapitalTristate) were performing the work, and thereby defrauding the customers into paying Defendants for CapitalTristate's jobs;

- Accepting payments from CapitalTristate's customers for CapitalTristate jobs, thereby defrauding CapitalTristate of its fee; and

- Concealing the fraudulent activity by, among other things, issuing credits to various CapitalTristate accounts.

183. The acts set forth above, in Paragraphs 45-71, 97-132, 138-153, and 160-167, and as set forth fully in this Complaint, were continuous in nature, consisted of numerous unlawful individual acts directed at CapitalTristate and its existing and prospective customers, persisted

over an extended period of time, and constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

184.     The Count I Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity as set forth above, outlined in Paragraphs 182 and 183, and described fully in this Complaint, in violation of 18 U.S.C. § 1962(c).

185.     CapitalTristate received invoices, purchase orders, pricing lists, and other documents from and/or at the direction and/or acquiescence of the Count I Defendants that contained fraudulent and false statement, material omissions, and/or concealed material facts.

186.     CapitalTristate was unaware that the invoices, price lists, purchase order, and other documents and communications contained fraudulent information and omissions, and CapitalTristate was justified in relying on them.

187.     CapitalTristate acted in reasonable reliance on the deceptive documents to its detriment.

188.     As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), CapitalTristate has been injured in its business and property within the meaning of 18 U.S.C. § 1964(c) including by (1) being defrauded of its money pursuant to the fraudulent and fake invoices; (2) being defrauded of its money pursuant to inflated prices on goods to pay illegal kickbacks; (3) being defrauded of its money and property as a result of the being directed to order excess property that was used on non-CapitalTristate jobs; and (4) having its customers' payments diverted to the Count I Defendants.  But for the Count I Defendants' conduct constituting violations of 18 U.S.C. § 1962 (c), CapitalTristate would not have been injured.

WHEREFORE, Plaintiff CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and find Count I Defendants jointly and severally liable for the violations of 18 U.S.C. §1962(c);

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO;

D.      Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT II
## RICO, 18 U.S.C. § 1962(c)
### (Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, TK Lighting, Adam Harmon, and AXIS)

189.    The allegations contained in paragraphs 1 through 188 are incorporated by reference as if set forth fully herein.

190.    Plaintiff, CapitalTristate, is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

191.    Each Count II Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (c).

192.    The Count II Defendants formed an association-in-fact with each other, constituting an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (c), which at all relevant times operated separately and distinct from the Count II Defendants, and whose activities were engaged in and/or affected interstate commerce.

193.    The enterprise and fraudulent schemes affected interstate commerce in that money crossed state lines (including, but not limited to, from Ohio to Maryland and Pennsylvania), the retrofitting jobs occurred in multiple states in the Mid-Atlantic, products were transmitted interstate (including from Ohio to Maryland), and the communications in furtherance of the fraudulent schemes (including communications directing the creation of fraudulent invoices) occurred interstate.

194.    The Count II Defendants were each associated with the enterprise and participated in its management and/or operation by directing its affairs and/or by conducting business with each other and by participating and assisting in the fraudulent schemes described herein to illegally profit at CapitalTristate's expense.

195.    The Count II Defendants agreed to and did conduct and participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity under 18 U.S.C. §§ 1961(1)(B), 1961(5), and 1962(c), including:

a)      Multiple acts of mail fraud in violation of 18 U.S.C. §1341 as set forth herein;

b)      Multiple acts of wire fraud in violation of 18 U.S.C. § 1343 as set forth herein; and

c)      Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314 as set forth herein.

196.    The Count II Defendants' use of the mails and wires to transmit documents and transfer funds in violations of 18 U.S.C. §§ 1341 and 1343, as described in this Complaint, occurred uniformly and consistently during the existence of the enterprise.

197.    The Count II Defendants' interstate transporting of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314, as described in this Complaint, occurred uniformly and consistently during the existence of the enterprise.

39

198.    This association-in-fact enterprise had a common purpose, which was to charge CapitalTristate inflated and illegal fees, cause CapitalTristate to purchase product it did not need, to defraud CapitalTristate out of money, to give effect to the fraudulent schemes described herein, and to illegally profit from that activity at the expense of CapitalTristate.

199.    The Count II Defendants developed and agreed upon the fraudulent schemes described herein with the specific intent to deceive and defraud CapitalTristate.

200.    Each Count II Defendant participated in the fraudulent and racketeering activity willfully and with actual knowledge that the conduct was illegal.

201.    Each Count II Defendant had a substantial and distinct role in the fraudulent schemes and racketeering activity.

202.    The association-in-fact enterprise was established for an economic motive and has continued as a unit for years.

203.    Pursuant to and in furtherance of their fraudulent scheme, the Count II Defendants committed multiple related and continuous acts of fraud including:

- Creating, using, and sending via mail and wire fraudulent pricing lists and invoices to defraud CapitalTristate about the true value of the goods CapitalTristate was purchasing;

- Agreeing to use and using deceptive procedures that caused CapitalTristate to pay inflated invoices and order products it did not need; and

- Receiving and retaining illegal payments/kickbacks funded by CapitalTristate pursuant to the fraudulent invoices.

204.    The acts set forth above, in Paragraphs 72-96 and 160-167, and as set forth fully in this Complaint, were continuous in nature, consisted of numerous unlawful individual acts directed

at CapitalTristate, persisted over an extended period of time, and constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

205.    The Count II Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity as set forth above, outlined in Paragraphs 203 and 204, and described fully in this Complaint, in violation of 18 U.S.C. § 1962(c).

206.    CapitalTristate received invoices, pricing lists, and other documents from and/or at the direction and/or acquiescence of the Count II Defendants that contained fraudulent and false statements, material omissions, and/or concealed material facts.

207.    CapitalTristate was unaware that the invoices, price lists, requests to purchase products, and other documents and communications contained fraudulent information and omissions, and CapitalTristate was justified in relying on them.

208.    CapitalTristate acted in reasonable reliance on the deceptive documents to its detriment.

209.    As a direct and proximate result of the Count II Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), CapitalTristate has been injured in its business and property within the meaning of 18 U.S.C. § 1964(c) including by (1) being defrauded of its money pursuant to the fraudulent invoices; (2) being defrauded of its money pursuant to inflated prices on goods to pay illegal kickbacks; and (3) being defrauded of its money by virtue of purchasing products it did not need and cannot use.  But for the Count II Defendants' conduct constituting violations of 18 U.S.C. § 1962 (c), CapitalTristate would not have been injured.

WHEREFORE, Plaintiff CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Count II Defendants jointly and severally liable for the violations of 18 U.S.C. §1962(c);

B.     Award compensatory damages in an amount to be proven at trial;

C.     Award three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO;

D.     Award prejudgment and post judgment interest;

E.     Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.     Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT III
## RICO, 18 U.S.C. § 1962(c)
## (Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, Volturno, and MEKW)

210.    The allegations contained in paragraphs 1 through 209 are incorporated by reference as if set forth fully herein.

211.    Plaintiff, CapitalTristate, is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

212.    Each Count III Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (c).

213.    The Count III Defendants formed an association-in-fact with each other, constituting an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (c), which at all relevant times operated separately and distinct from the Count III Defendants, and whose activities were engaged in and/or affected interstate commerce.

214.    The enterprise and fraudulent schemes affected interstate commerce in that money crossed state lines (including, but not limited to, from Maryland to Pennsylvania), the retrofitting jobs occurred in multiple states in the Mid-Atlantic, invoices were transmitted interstate via wire

and/or U.S. mail, and the communications in furtherance of the fraudulent schemes (including communications directing the creation of fraudulent invoices) occurred interstate.

215.    The Count III Defendants were each associated with the enterprise and participated in its management and/or operation by directing its affairs and/or by conducting business with each other and by participating and assisting in the fraudulent schemes described herein to illegally profit at CapitalTristate's expense.

216.    The Count III Defendants agreed to and did conduct and participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity under 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), including:

a)      Multiple acts of mail fraud in violation of 18 U.S.C. §1341 as set forth herein;

b)      Multiple acts of wire fraud in violation of 18 U.S.C. § 1343 as set forth herein; and

c)      Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314 as set forth herein.

217.    The Count III Defendants' use of the mails and wires to transmit documents and transfer funds in violations of 18 U.S.C. §§ 1341 and 1343, as described herein, occurred uniformly and consistently during the existence of the enterprise.

218.    The Count III Defendants' interstate transporting of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314, as described herein, occurred uniformly and consistently during the existence of the enterprise.

219.    This association-in-fact enterprise had a common purpose, which was to charge CapitalTristate inflated and illegal fees for the services that JC Sons performed on the CapitalTristate retrofitting jobs, to defraud CapitalTristate out of money, to give effect to the fraudulent schemes described herein, and to illegally profit from that activity at the expense of CapitalTristate.

43

220.    The Count III Defendants developed and agreed upon the fraudulent schemes described herein with the specific intent to deceive and defraud CapitalTristate.

221.    Each Count III Defendant participated in the fraudulent and racketeering activity willfully and with actual knowledge that the conduct was illegal.

222.    Each Count III Defendant had a substantial and distinct role in the fraudulent schemes and racketeering activity.

223.    The association-in-fact enterprise was established for an economic motive and has continued as a unit for years.

224.    Pursuant to and in furtherance of their fraudulent scheme, the Count III Defendants committed multiple related and continuous acts of fraud including:

- Creating, using, and sending via U.S. mail and wire fraudulent and inflated invoices to defraud CapitalTristate about the true value of the goods and services CapitalTristate was receiving from JC Sons;

- Agreeing to use and using deceptive procedures that caused CapitalTristate to pay the inflated and fraudulent invoices; and

- Obtaining and retaining illegal payments/kickbacks funded by CapitalTristate pursuant to the fraudulent invoices.

225.    The acts set forth above, in Paragraphs 45-71, 133-137, and 160-167, and as set forth fully in this Complaint, were continuous in nature, consisted of numerous unlawful individual acts directed at CapitalTristate and its existing and prospective customers, persisted over an extended period of time, and constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

226.    The Count III Defendants directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity as set forth

above, outlined in Paragraph 225, and described fully in this Complaint, in violation of 18 U.S.C. § 1962(c).

227.     CapitalTristate received invoices and other documents from and/or at the direction and/or acquiescence of the Count III Defendants that contained fraudulent and false statements, material omissions, and/or concealed material facts.

228.     CapitalTristate was unaware that the invoices and other documents and communications contained fraudulent information and omissions, and CapitalTristate was justified in relying on them.

229.     CapitalTristate acted in reasonable reliance on the deceptive documents to its detriment.

230.     As a direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), CapitalTristate has been injured in its business and property within the meaning of 18 U.S.C. § 1964(c) including, but not limited to, being defrauded of its money pursuant to the inflated and fraudulent JC Sons invoices.  But for the Count III Defendants' conduct constituting violations of 18 U.S.C. § 1962(c), CapitalTristate would not have been injured.

WHEREFORE, Plaintiff CapitalTristate respectfully requests:

A.     That the Court enter judgment in CapitalTristate's favor, and find Count III Defendants jointly and severally liable for the violations of 18 U.S.C. §1962(c);

B.     Award compensatory damages in an amount to be proven at trial;

C.     Award three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO;

D.     Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

**COUNT IV**
**RICO 18. U.S.C. § 1962(d)**
**(Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, MEKW, TK Lighting, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith)**

231.    The allegations contained in paragraphs 1 through 230 are incorporated by reference as if set forth fully herein.

232.    Plaintiff, CapitalTristate, is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

233.    Each Count IV Defendant and co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (d).

234.    Count IV Defendants formed an association-in-fact with each other, which constitutes an enterprise engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. § 1961(4) and 1962(c).

235.    Count IV Defendants as co-conspirators were associated with the enterprise described herein and agreed and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(c) as set forth in Count I, including conspiring to operate, maintain control of, participate, and maintain an interest in the enterprise and have done so through a pattern of unlawful activity, including multiples instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

236.    Count IV Defendants intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

46

237.    Count IV Defendants knew of the RICO violations described herein and agreed to facilitate and participate in those activities.

238.    The Count IV Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described in Count I. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

239.    As a direct and proximate result of the Count IV Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff CapitalTristate has been injured in its business and property including by (1) being defrauded of its money pursuant to the fraudulent and fake invoices; (2) being defrauded of its money pursuant to inflated prices on goods to pay illegal kickbacks; (3) being defrauded of its money and property as a result of the fraud to order excess property that is used on non-CapitalTristate jobs; and (4) having its customers' payments diverted to the Count IV Defendants.   But for the Count IV Defendants' conduct constituting a conspiracy to violate 18 U.S.C. § 1962 (c), CapitalTristate would not have been injured.

WHEREFORE, Plaintiff CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Count IV Defendants jointly and severally liable for the violations of 18 U.S.C. §1962(d);

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.     Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

**COUNT V**
**RICO 18. U.S.C. § 1962(d)**
**(Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, TK Lighting, Adam Harmon, and AXIS)**

240.   The allegations contained in paragraphs 1 through 239 are incorporated by reference as if set forth fully herein.

241.   Plaintiff, CapitalTristate, is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

242.   Each Count V Defendant and co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (d).

243.   Count V Defendants formed an association-in-fact with each other, which constitutes an enterprise engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. § 1961(4) and 1962(c).

244.   Count V Defendants as co-conspirators were associated with the enterprise described herein and agreed and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(c) as set forth in Count II, including conspiring to operate, maintain control of, participate and maintain an interest in the enterprise and have done so through a pattern of unlawful activity, including multiples instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

245.   Count V Defendants intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

246.   Count V Defendants knew of the RICO violations described herein and agreed to facilitate and participate in those activities.

48

247.    The Count V Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described in Count II. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

248.    As a direct and proximate result of the Count V Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff CapitalTristate has been injured in its business and property including by (1) being defrauded of its money pursuant to the fraudulent invoices; (2) being defrauded of its money pursuant to inflated prices on goods to pay illegal kickbacks; and (3) being defrauded of its money by virtue of purchasing products it did not need and cannot use.  But for the Count V Defendants' conduct constituting a conspiracy to violate 18 U.S.C. § 1962(c), CapitalTristate would not have been injured.

WHEREFORE, Plaintiff CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Count V Defendants jointly and severally liable for the violations of 18 U.S.C. §1962(d);

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

**COUNT VI**
**RICO 18. U.S.C. § 1962(d)**
**(Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, Volturno, and MEKW)**

249.     The allegations contained in paragraphs 1 through 248 are incorporated by reference as if set forth fully herein.

250.     Plaintiff, CapitalTristate, is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

251.     Each Count VI Defendant and co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (d).

252.     Count VI Defendants formed an association-in-fact with each other, which constitutes an enterprise engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. § 1961(4) and 1962(c).

253.     Count VI Defendants as co-conspirators were associated with the enterprise described herein and agreed and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(c) as set forth in Count III, including conspiring to operate, maintain control of, participate and maintain an interest in the enterprise and have done so through a pattern of unlawful activity, including multiples instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

254.     Count VI Defendants intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

255.     Count VI Defendants knew of the RICO violations described herein and agreed to facilitate and participate in those activities.

256.     The Count VI Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described in Count III. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

257.     As a direct and proximate result of the Count VI Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff CapitalTristate has been injured in its business and property including, but not limited to, being defrauded of its money pursuant to the inflated and fraudulent JC Sons invoices.  But for the Count VI Defendants' conduct constituting a conspiracy to violate 18 U.S.C. § 1962 (c), CapitalTristate would not have been injured.

WHEREFORE, Plaintiff CapitalTristate respectfully requests:

A.     That the Court enter judgment in CapitalTristate's favor, and find Count VI Defendants jointly and severally liable for the violations of 18 U.S.C. §1962(d);

B.     Award compensatory damages in an amount to be proven at trial;

C.     Award three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered by RICO;

D.     Award prejudgment and post judgment interest;

E.     Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.     Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT VII
## BREACH OF DUTY OF LOYALTY
### (Against Defendant Ken Wirtz)

258.     The allegations contained in paragraphs 1 through 257 are incorporated by reference as if set forth fully herein.

259.    As CapitalTristate's employee and an Account Manager in the EMS Division, Ken Wirtz was in a position of trust, confidence, and leadership and had a duty of loyalty to faithfully serve CapitalTristate and refrain from doing any act that would knowingly and willfully injure CapitalTristate.

260.    As CapitalTristate's employee and Account Manager, Ken Wirtz had a duty to act solely for CapitalTristate's benefit in all matters within the scope of his employment.

261.    As CapitalTristate's employee and Account Manager, Ken Wirtz had a duty to avoid all conflicts between his duty to CapitalTristate and his personal benefit, and not to engage in self-dealing.

262.    As CapitalTristate's employee and Account Manager, Ken Wirtz had a duty to perform his job in good faith and to be honest in the performance and execution of his job.

263.    As CapitalTristate's employee and Account Manager, Ken Wirtz had a duty not to steal CapitalTristate's money or property for his own benefit or for others' benefit.

264.    As CapitalTristate's employee and Account Manager, Ken Wirtz had a duty to not interfere with CapitalTristate's business relationships with its customers, potential customers, subcontractors, suppliers, and/or brokers.

265.    As CapitalTristate's employee and Account Manager, Ken Wirtz had a duty to provide undivided and unselfish loyalty to CapitalTristate.

266.    Ken Wirtz breached the aforementioned duties when, for his personal benefit and for his own self-interests, and to CapitalTristate's detriment, Ken Wirtz engaged in the fraudulent schemes outlined in this Complaint, including, but not limited to, when he:

    a)    Advised, conspired, and worked in concert with Todd Sibel and others to set inflated JC Sons' invoice amounts;

    b)    Advised, conspired, and worked in concert with Todd Sibel and others to set inflated Sibel Sales' invoice amounts;

52

c)      Advised, conspired, and worked in concert with Todd Sibel and others to create fake JC Sons' invoices and credits;

d)      Advised, conspired, and worked in concert with Todd Sibel and others to create fake Sibel Sales' credits;

e)      Advised, conspired, and worked in concert with Todd Sibel, Adam Harmon, AXIS, and others to set and create an inflated price list for AXIS products and inflate AXIS invoices;

f)      Advised, conspired, and worked in concert with Todd Sibel, Adam Harmon, AXIS, and others to order and cause CapitalTristate to purchase excess products from AXIS;

g)      Knowingly and with ill intent over-ordered, or caused CapitalTristate to over-order, products from manufacturers and suppliers;

h)      Knowingly diverted products/supplies from CapitalTristate jobs and used them at TK Lighting jobs (his wife's company);

i)      Knowingly assisted and/or benefited from TK Lighting obtaining jobs that otherwise would have gone to CapitalTristate;

j)      Defrauded CapitalTristate customers into believing that their contracts were with TK Lighting and that TK Lighting was overseeing/performing the job, rather than CapitalTristate, which caused CapitalTristate's customers to pay TK Lighting for CapitalTristate's work;

k)      Advised, conspired, and worked in concert with Todd Sibel, Kristen Wirtz, and TK Lighting to send TK Lighting invoices to CapitalTristate customers for work performed by CapitalTristate;

l)      Knowingly received and retained money from Todd Sibel, Sibel Sales, and/or other defendants (money they received by fraudulently billing CapitalTristate) for labor Ken Wirtz performed on CapitalTristate jobs;

m)      Stole money from CapitalTristate by retaining for himself overpayments made by CapitalTristate because of the fake and inflated invoices;

n)      Approved invoices from subcontractors, suppliers, brokers, and others that he knew to be fraudulent;

o)      Directed CapitalTristate employees to manipulate CapitalTristate's internal accounts and records to cover-up his fraud and perpetuate his fraudulent schemes;

p)      Devised a scheme whereby he (and others) would receive commissions on returned, written-off, or otherwise unrealized sales; and

q)      Actively concealed the various fraudulent schemes and directed other CapitalTristate employees to take actions that would conceal the fraud.

267.     As a proximate and direct result of Ken Wirtz's breaches, CapitalTristate has sustained damages not less than $6 million.

268.     Ken Wirtz's intentional conduct and breaches as set forth above were done willfully and with actual malice, evil motive, ill will, and with the intent to injure and defraud CapitalTristate, and did in fact defraud and injure CapitalTristate.

WHEREFORE, CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and against Ken Wirtz;

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award punitive damages in the amount of $20 million;

D.      Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT VIII
### FRAUD (Fraudulent Misrepresentation)
### (Against Defendant Ken Wirtz)

269.     The allegations contained in paragraphs 1 through 268 are incorporated by reference as if set forth fully herein.

270.     Ken Wirtz made numerous false representations of material facts to CapitalTristate as set forth in this Complaint including that (a) he was honestly and faithfully serving CapitalTristate and its interests, (b) the invoices he was approving and/or causing to have approved and paid, were not fraudulent, (c) the purchase orders that he created or caused to have created

were not fraudulent or for excess products, (d) the products purchased for CapitalTristate projects were used for CapitalTristate projects only, (e) the costs and pricing for subcontractors, brokers, suppliers and others were legitimate and not fraudulent or inflated, (f) the commissions he (and others) received were on actual realized sales; (g) instructions to CapitalTristate employees with respect to CapitalTristate's internal accounts and records were legitimate, (h) his dealings, representations, and actions with CapitalTristate were in CapitalTristate's best interest, (i) he was not making representations or taking any actions that would cause customers to pay competitors for CapitalTristate's work, (j) he was not stealing from and/or assisting others in stealing from CapitalTristate, and (k) he was not engaging in any cover-up schemes.

271.   Ken Wirtz knew that his statements were false when he made them, but nevertheless made them with the purpose of defrauding CapitalTristate.

272.   Ken Wirtz intended that CapitalTristate would act in reliance on the false representations by continuing to employ Ken Wirtz, continuing to entrust Ken Wirtz with the company's property, money, information, and customer relationships, and continuing the payments of the fraudulent invoices and over-ordering of products.

273.   CapitalTristate relied on the belief that Ken Wirtz was performing his duties honestly and in good faith, that Ken Wirtz was not breaching his fiduciary duties, and that Ken Wirtz was not making false representations of material facts.  CapitalTristate was justified in that reliance.

274.   In justifiable reliance on Ken Wirtz's false representations, CapitalTristate continued to employ Ken Wirtz, continued to entrust Ken Wirtz with the company's property, money, information, and customer relationships, and did not stop or prohibit the payments of fraudulent invoices or over-ordering of products.

275. As a proximate and direct result of Ken Wirtz's intentional misrepresentations, CapitalTristate has sustained damages not less than $6 million.

276. As set forth above, Ken Wirtz's intentional misrepresentations were done with actual malice, evil motive, ill will, and with the intent to injure and defraud CapitalTristate, and did in fact defraud and injure CapitalTristate.

WHEREFORE, CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and against Ken Wirtz;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT IX
### FRAUD (Fraudulent Misrepresentation)
**(Against Defendants Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith)**

277. The allegations contained in paragraphs 1 through 276 are incorporated by reference as if set forth fully herein.

278. Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith made numerous false representations of material facts to CapitalTristate as set forth in this Complaint, including, but not limited to (a) representing to CapitalTristate that the invoices submitted to CapitalTristate were legitimate, not inflated, and accurately reflected the costs of the goods and services invoiced; (b) representing to

CapitalTristate that the products ordered from AXIS were necessary for CapitalTristate jobs, and (c) representing to CapitalTristate that the payment for the JC Sons, Baltimore's Light Source, and AXIS invoices were going to JC Sons, Baltimore's Light Source, and AXIS for the payment of the actual costs of the goods and services, rather than a portion of the payment being paid to Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, Christine Smith, and MEKW as kickbacks or payments above the costs of the goods and services provided.

279.     Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith knew that their statements/representations were false when made, but nevertheless made them with the purpose of defrauding CapitalTristate.

280.     Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith intended that CapitalTristate would act in reliance on the false representations and continue, among other things, to pay the fraudulent invoices, to order products from AXIS at the inflated prices, and to order excess product.

281.     CapitalTristate relied on the belief that Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith were honest in their dealings with CapitalTristate, and that Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith were not making false representations of material facts.   CapitalTristate was justified in that reliance.

282.     In justifiable reliance on Ken Wirtz's, Todd Sibel's, Kristen Wirtz's, Sibel Sales', Adam Harmon's, AXIS's, JC Sons', Baltimore's Light Source's, Jeffrey Smith's, and Christine

Smith's false representations, CapitalTristate did not stop or prohibit the payments of the fraudulent invoices, continued to order products from AXIS at the inflated prices, continued to order excess product, and otherwise acted in reliance on their false representations.

283.    As a proximate and direct result of Ken Wirtz's, Todd Sibel's, Kristen Wirtz's, Sibel Sales', Adam Harmon's, AXIS's, JC Sons', Baltimore's Light Source's, Jeffrey Smith's, and Christine Smith's intentional misrepresentations, CapitalTristate has sustained damages not less than $6 million.

284.    Ken Wirtz's, Todd. Sibel's, Kristen Wirtz's, Sibel Sales', Adam Harmon's, AXIS's, JC Sons', Baltimore's Light Source's, Jeffrey Smith's, and Christine Smith's intentional misrepresentation and fraudulent conduct were done with actual malice, evil motive, ill will, and with the intent to injure and defraud CapitalTristate, and did in fact defraud and injure CapitalTristate.

WHEREFORE, CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Defendants Ken Wirtz, Todd Sibel, Kristen Wirtz, Sibel Sales, Adam Harmon, AXIS, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith jointly and severally liable for fraud;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

**COUNT X**
**FRAUD (Non-Disclosure or Concealment)**
**(Against Defendant Ken Wirtz)**

285.    The allegations contained in paragraphs 1 through 284 are incorporated by reference as if set forth fully herein.

286.    Ken Wirtz intentionally failed to disclose and concealed material facts to CapitalTristate as set forth in this Complaint, including the following: (a) that he was not honestly and faithfully serving CapitalTristate and its interests; (b) the invoices he was approving and/or causing to have approved and paid were fraudulent; (c) the purchase orders for products that he created or caused to have created were fraudulent and for excess products; (d) he diverted and used some of the products CapitalTristate purchased for use on CapitalTristate projects to TK Lighting, its jobs, and other non-CapitalTristate jobs; (e) the costs and pricing for subcontractors, brokers, suppliers and others were fraudulent or inflated; (f) he assisted and/or benefitted from TK Lighting (his wife's company) securing jobs in competition with CapitalTristate; (g) the commissions he (and others) received included commissions on unrealized sales; (h) he encouraged his co-workers to purchase AXIS products at inflated prices so that he, Kristen Wirtz, and Todd Sibel could obtain kick-backs; (i) he was making representations and taking actions that would cause customers to pay competitors for CapitalTristate's work; and (j) he was stealing from and assisting others in stealing from CapitalTristate.

287.    Ken Wirtz had a duty to disclose and not conceal the aforementioned omissions and concealments of material facts as CapitalTristate's trusted employee, Account Manager in CapitalTristate's EMS division, and fiduciary.

288.    As an Account Manager in the EMS division, Ken Wirtz had control and influence over all aspects of the retrofitting jobs including the bid process, overseeing and directing subcontractors, dealing with and ordering from suppliers, interacting with brokers, and overseeing

invoicing from all parties.  In that role, and in the exercise of those duties, Ken Wirtz owed a fiduciary duty to CapitalTristate.

289.    CapitalTristate put trust and confidence in Ken Wirtz to carry out his duties in good faith.

290.    As an Account Manager, Ken Wirtz had at all times a duty to disclose to CapitalTristate (a) any fraudulent invoices submitted to it for goods and services, (b) any over-ordering of product, (c) that CapitalTristate's products and supplies were being used by TK Lighting or other competitors on their jobs;   (d) the fact that he was assisting with, and/or benefitting from, business being diverted away from CapitalTristate to TK Lighting, (e) that he encouraged his co-workers to purchase AXIS products at inflated prices so that he, Kristen Wirtz, and Todd Sibel could obtain kick-backs, (f) he was making representations and taking actions that would cause customers to pay competitors for CapitalTristate's work, (g) he was (and others were) retaining commissions on unrealized sales; (h) he was stealing from and assisting others in stealing from CapitalTristate, and (i) he was not otherwise acting in CapitalTristate's interest, but rather for his (and others') personal gain.

291.    Ken Wirtz breached the duty to disclose by failing to advise CapitalTristate of the above material facts.

292.    Ken Wirtz intentionally concealed the fraud by, among other things and as set forth in this Complaint, altering invoices and/or having others alter invoices, and by instructing CapitalTristate employees and others to take actions that would cover-up the fraudulent schemes (such as issuing fake credits and manipulating CapitalTristate's internal accounts).

293.    Ken Wirtz's failure to disclose and active concealment as set forth herein were material, intentional, and made with the purpose of defrauding and deceiving CapitalTristate.

294.    Ken Wirtz knew that CapitalTristate would not have, among other things, continued his employment, continued to permit him access to CapitalTristate's customers, agreed to pay the fraudulent invoices, and continued ordering excess products at his direction had CapitalTristate known about the fraudulent schemes and above omissions.

295.    CapitalTristate had no reason to believe that Ken Wirtz was engaged in fraudulent conduct, stealing from the company, enabling others to steal from the company, assisting with and/or benefitting from business being diverted away from CapitalTristate, diverting payments away from CapitalTristate, and/or otherwise acting to injure and defraud CapitalTristate.

296.    CapitalTristate had no reason to believe that Ken Wirtz was not performing his job duties honestly and in good faith.

297.    CapitalTristate relied on the belief that Ken Wirtz was performing his duties honestly and in good faith, that he was not breaching his fiduciary duties, and that he was not failing to disclose material facts or concealing material facts.  CapitalTristate was justified in that reliance.

298.    As a direct and proximate result of Ken Wirtz's concealment and failure to disclose as set forth herein, CapitalTristate continued, among other things, to employ Ken Wirtz, continued to permit him access to CapitalTristate's customers, continued to pay fraudulent invoices, and continued to over-order products.

299.    As a direct and proximate result of Ken Wirtz's intentional concealment and failure to disclose, CapitalTristate sustained damages not less than $6 million.

300.    Ken Wirtz's intentional concealment and failure to disclose as set forth herein was done with actual malice, evil motive, ill will, and with the intent to injure and defraud CapitalTristate, and did in fact defraud and injure CapitalTristate.

WHEREFORE, CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and against Ken Wirtz;

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award punitive damages in the amount of $20 million;

D.      Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XI
## CONSTRUCTIVE FRAUD
### (Against Defendant Ken Wirtz)

301.    The allegations contained in paragraphs 1 through 300 are incorporated by reference as if set forth fully herein.

302.    As an Account Manager in CapitalTristate's EMS division, Ken Wirtz had a duty to honestly and faithfully serve CapitalTristate and refrain from doing any act that would knowingly and willfully injure CapitalTristate.

303.    As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty to act solely for CapitalTristate's benefit in all matters within the scope of his employment.

304.    As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty to avoid all conflicts between his duty to CapitalTristate and his personal benefit, and to not engage in self-dealing.

305.    As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty to perform his job in good faith and to be honest in the performance and execution of his job.

306.     As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty not to steal CapitalTristate's money and property.

307.     As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty not to inflate prices for goods and services for the purpose of providing improper kickbacks to himself, his wife (Defendant Kristin Wirtz), Todd Sibel, Adam Harmon, and others.

308.     As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty not to order excess product for the purpose of increasing his commissions and receiving kickbacks on those sales.

309.     As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty not to (a) assist with and/or benefit from business being diverted away from CapitalTristate, and/or (b) assist with and/or benefit from diverting payments rightfully earned by CapitalTristate away from CapitalTristate.

310.     As CapitalTristate's employee, Account Manager, and fiduciary, Ken Wirtz had a duty to not devise a commission scheme that caused CapitalTristate to pay him (and others) commissions on unrealized sales and had a duty not to retain such commissions.

311.     Ken Wirtz breached the aforementioned duties when, for his benefit and own self-interests, and to Capital Tristate's substantial detriment, he engaged in the fraudulent schemes set forth in this Complaint, stole money and property from CapitalTristate, covered-up his theft and fraud, and otherwise acted against CapitalTristate's interests.

312.     Ken Wirtz's theft, fraudulent conduct, and cover-ups were deceitful and violated the confidence and trust that CapitalTristate entrusted to him as an Account Manager.

313.     As a direct and proximate result of Ken Wirtz's breaches of his fiduciary duty, CapitalTristate sustained damages not less than $6 million.

314.   Ken Wirtz's conduct as set forth herein, including his theft, cover-up and other fraudulent schemes, were done willfully, and with actual malice, evil motive, ill will, and with the intent to injure and defraud CapitalTristate, and did in fact defraud and injure CapitalTristate.

WHEREFORE, CapitalTristate respectfully requests:

A.   That the Court enter judgment in CapitalTristate's favor, and against Ken Wirtz;

B.   Award compensatory damages in an amount to be proven at trial;

C.   Award punitive damages in the amount of $20 million;

D.   Award prejudgment and post judgment interest;

E.   Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.   Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XII
## NEGLIGENCE (Breach of Fiduciary Duty)
### (Against Defendant Ken Wirtz)

315.   The allegations contained in paragraphs 1 through 314 are incorporated by reference as if set forth fully herein.

316.   As an Account Manager in CapitalTristate's EMS division, Ken Wirtz was accountable to CapitalTristate as a fiduciary and owed CapitalTristate a duty to act for the benefit of the company with loyalty and good faith, and without any self-interest or self-dealing.

317.   Included in Ken Wirtz's fiduciary duty was a duty to honestly and faithfully serve CapitalTristate and refrain from doing any act that would knowingly and willfully injure CapitalTristate, including a duty not to steal from the company, a duty not to cover-up the theft, and a duty not to act in concert with others in injuring CapitalTristate including, but not limited to, causing fraudulent invoices to be submitted to, and approved and paid by, CapitalTristate.

318.     Ken Wirtz negligently breached his duties to CapitalTristate when, for his benefit and own self-interest, and to Capital Tristate's substantial detriment, he engaged in the fraudulent schemes set forth in this Complaint, stole money and property from CapitalTristate, covered-up his theft and fraud, and otherwise acted against CapitalTristate's interests.

319.     As a direct and proximate result of Ken Wirtz's negligence in failing to meet, and in breaching his fiduciary duties owed CapitalTristate, CapitalTristate sustained damages not less than $6 million.

WHEREFORE, CapitalTristate respectfully requests:

A.     That the Court enter judgment in CapitalTristate's favor, and against Ken Wirtz;

B.     Award compensatory damages in an amount to be proven at trial;

C.     Award prejudgment and post judgment interest;

D.     Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

E.     Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

**COUNT XIII**
**CONVERSION**
**(Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting)**

320.     The allegations contained in paragraphs 1 through 319 are incorporated by reference as if fully set forth herein.

321.     From approximately 2014 until approximately April 12, 2017 (the date Ken Wirtz was terminated), Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting intentionally, and with actual malice, took and retained CapitalTristate's property without CapitalTristate's permission or justification.

322.     The Count XIII Defendants took the product and supplies from CapitalTristate and used those products and supplies for TK Lighting's or other non-Capital Tristate jobs without paying for them.

323.     The Count XIII Defendants' intentional, willful, and improper taking and retaining of CapitalTristate's products and supplies, and the exercise of dominion over those products and supplies, constitutes a conversion of CapitalTristate's property.

324.     Prior to the conversion, CapitalTristate was in actual possession of the property and was entitled to its immediate return.

325.     Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting have deprived CapitalTristate of its right in, use, and possession of its property without CapitalTristate's consent and without lawful justification by stealing the property from CapitalTristate.

326.     Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting unlawfully, intentionally, and with actual malice and ill motive took and retained CapitalTristate's products and supplies with the specific intent to injure CapitalTristate.

327.     As a direct and proximate result of Ken Wirtz's, Kristen Wirtz's, Todd Sibel's, and TK Lighting's conversion of CapitalTristate's property, CapitalTristate has been damaged.

WHEREFORE, CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and find Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting jointly and severally liable for conversion;

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award punitive damages in the amount of $20 million;

D.      Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just.

## COUNT XIV
## CONVERSION
### (Against All Defendants)

328.    The allegations contained in paragraphs 1 through 327 are incorporated by reference as if fully set forth herein.

329.    From at least 2014 until approximately April 12, 2017 (the date Ken Wirtz was terminated), Defendants intentionally, and with actual malice, took and retained without authority or right, various CapitalTristate accounts receivable without prior permission or justification.

330.    At all relevant times, CapitalTristate had a possessory interest in its accounts receivable, as specific and identifiable assets.

331.    Defendants, without authority or right, took and exercised control over Plaintiff CapitalTristate's accounts receivable, in that they:

- Caused payment by CapitalTristate's clients (owed to CapitalTristate and reflected in CapitalTristate's accounts receivable for that client account) to be diverted and paid to Defendants;

- Retained the diverted payments that were earmarked for the specific jobs and specific accounts receivable;

- Improperly invoiced CapitalTristate for specific jobs and specific accounts receivable and wrongfully retained the payments received from those invoices; and

- Applied false credits against accounts receivables.

67

332. Such acts by Defendants are in denial of, and inconsistent with, Plaintiff's possessory rights to their accounts receivable.

333. Defendants' intentional, willful, and improper taking and retaining of Plaintiff's accounts receivable, and the exercise of dominion over those specific and indefinable assets, constitutes a conversion of CapitalTristate's property.

334. Prior to the conversion, CapitalTristate was in actual possession of the property, and was entitled to its immediate return.

335. Defendants have deprived CapitalTristate of its right in, use, and possession of its property without CapitalTristate's consent, and without lawful justification, by stealing the property from CapitalTristate.

336. Defendants unlawfully, intentionally, and with actual malice and ill motive, took and retained CapitalTristate's accounts receivable with the specific intent to injure CapitalTristate.

337. As a direct and proximate result of Defendants' conversion of CapitalTristate's assets, CapitalTristate has been damaged.

WHEREFORE, CapitalTristate respectfully requests:

A. That the Court enter judgment in CapitalTristate's favor, and find Defendants jointly and severally liable for conversion;

B. Award compensatory damages in an amount to be proven at trial;

C. Award punitive damages in the amount of $20 million;

D. Award prejudgment and post judgment interest;

E. Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F. Award such other and further relief as the nature of the cause requires and the Court deems just.

**COUNT XV**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

338.   The allegations contained in paragraphs 1 through 337 are incorporated by reference as if fully set forth herein.

339.   All Defendants received substantial benefit from CapitalTristate that they were not entitled to receive because of their fraudulent and/or otherwise wrongful conduct and schemes, including, but not limited to:

- Ken Wirtz's, Kristen Wirtz's, Todd Sibel's, and Sibel Sales' receipt and retention of money received as a result of inflated and/or fake JC Sons' invoices submitted to, and paid by, CapitalTristate;

- JC Sons', Jeffrey Smith's and Christine Smith's retention of payments on fake or inflated JC Sons' invoices;

- Baltimore's Light Source's, Jeffrey Smith's, Christine Smith's, Ken Wirtz's and Todd Sibel's retention of payments on fake or inflated Baltimore's Light Source's invoices;

- Ken Wirtz's, Kristen Wirtz's, Todd Sibel's, Sibel Sales', and MEKW's receipt and retention of kickbacks and payments from inflated and fake invoices from Sibel Sales and AXIS;

- TK Lighting's, Todd Sibel's, and Kristen Wirtz's retention of payments for work that CapitalTristate performed and/or CapitalTristate's jobs;

- TK Lighting's, Todd Sibel's, and Kristen Wirtz's use of CapitalTristate's products and materials on TK Lighting jobs without paying for them;

- TK Lighting's receipt and retention of payment from retrofitting jobs that were diverted away from CapitalTristate;

- Adam Harmon's and AXIS's receipt and retention of inflated payments from fraudulent invoices;

69

- Adam Harmon's and AXIS's receipt and retention of payments from CapitalTristate's purchase of excess AXIS products; and

- Ken Wirtz's retention of commissions on unrealized sales.

340.   Defendants were not entitled to the benefits set forth above.

341.   Defendants knew that they were receiving benefits from CapitalTristate and/or at CapitalTristate's expense that they were not entitled to.

342.   Defendants' acceptance and retention of the benefits, when those benefits were not earned and/or were wrongfully obtained, make it inequitable for them to retain those benefits.

343.   Permitting Defendants to retain those benefits would constitute an unjust enrichment to them at CapitalTristate's expense.

WHEREFORE, CapitalTristate respectfully requests:

A.   That the Court enter judgment in CapitalTristate's favor, and against all Defendants for unjust enrichment;

B.   Award compensatory damages in an amount to be proven at trial;

C.   Award prejudgment and post judgment interest;

D.   Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

E.   Award such other and further relief as the nature of the cause requires and the Court deems just.

## COUNT XVI
## MONEY HAD AND RECEIVED
### (Against All Defendants)

344.   The allegations contained in paragraphs 1 through 343 are incorporated by reference as if fully set forth herein.

345.     As set forth above, Defendants illegally charged, invoiced, collected, and retained certain sums of money from Plaintiff in excess of what Defendants were owed or entitled to, and additionally, illegally charged, invoiced, collected, and retained certain sums of money from Plaintiff they were never entitled to.

346.     By illegally charging, invoicing, collecting, and retaining money from Plaintiff, Defendants have come into the possession of money that they had and have no right to, at law or in equity.

347.     At all relevant times, Defendants knew of and appreciated that the benefits conferred upon them by Plaintiff, in the form of money paid by Plaintiff, were not rightfully earned; Plaintiff, however, was unaware and did not appreciate at the time that the money paid to Defendants was not rightfully earned.

348.     Defendants have accepted and retained the money paid by Plaintiff under circumstances which are inequitable, because Defendants would not have received such benefits but for Defendants' fraudulent, illegal, wrongful, and/or unethical actions.

349.     The retention of said money paid by Plaintiff to Defendants was, and continues to be, unjust and inequitable.

350.     Defendants have been unjustly enriched to the detriment of Plaintiff in an amount at least $6 million.

WHEREFORE, CapitalTristate respectfully requests:

A.     That the Court enter judgment in CapitalTristate's favor, and against Defendants for money had and received;

B.     Award compensatory damages in an amount to be proven at trial;

C.     Award prejudgment and post judgment interest;

D.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

E.      Award such other and further relief as the nature of the cause requires and the Court deems just.

**COUNT XVII**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**
**(Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting)**

351.    The allegations contained in paragraphs 1 through 350 are incorporated by reference as if fully set forth herein.

352.    At all relevant times, CapitalTristate entered into contracts with customers for the completion of retrofitting jobs.

353.    Defendants Ken Wirtz, Todd Sibel, Kristen Wirtz, and TK Lighting had specific knowledge of CapitalTristate's customers and customer contracts.

354.    Defendant Ken Wirtz, in coordination and concert with Defendants Todd Sibel, Kristen Wirtz, and TK Lighting, would intentionally, willfully, with actual malice and ill motive, make knowing misrepresentations to CapitalTristate's customers that TK Lighting was acting as the general contractor for that customer's retrofitting job and should be paid for those services instead of CapitalTristate.

355.    Defendants' conduct and misrepresentations to the customers intentionally and improperly induced CapitalTristate's customers into breaching their contract with CapitalTristate. Specifically, Defendants induced the customers to pay TK Lighting for the retrofitting job instead of CapitalTristate pursuant to their contract.

356.    Defendants' conduct was done with actual malice, ill motive, and with the specific intent to injure CapitalTristate.

357.    By way of example only, Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting intentionally interfered with a particular CapitalTristate contract when, in late 2015 and early 2016, they told a CapitalTristate customer that TK Lighting was managing their retrofitting project, and that CapitalTristate's customer should pay TK Lighting and not CapitalTristate.

358.    Without legal justification, Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting intentionally and improperly interfered with CapitalTristate's customer's performance of its contract with CapitalTristate by inducing CapitalTristate's customer to pay TK Lighting, and not CapitalTristate.

359.    Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting knew that CapitalTristate's customer and CapitalTristate had entered into a contract, and that CapitalTristate's customer was obligated to pay CapitalTristate under that contract.  Yet, Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting intentionally, and with an improper motive to injure, induced CapitalTristate's customer to breach its contract with CapitalTristate by paying TK Lighting, and not Capital Tristate.

360.    As a result of Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting's inducements and false representations, CapitalTristate's customer did, in fact, make payment to TK Lighting, and not CapitalTristate.

361.    As a result of Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting's conduct, CapitalTristate has suffered and will continue to suffer lost profits, consequential damages, and damages to its reputation.

WHEREFORE, CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and find Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting jointly and severally liable for tortious interference with contractual relationships;

73

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award punitive damages in the amount of $20 million;

D.      Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just.

## COUNT XVIII
## CIVIL CONSPIRACY
**(Against Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, Volturno, MEKW, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith)**

362.    The allegations contained in paragraphs 1 through 361 are incorporated by reference as if fully set forth herein.

363.    Without the consent or approval of Plaintiff CapitalTristate, Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, Volturno, MEKW, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith, as well as M.E.K. (not a defendant), entered into an agreement and/or understanding with one another and conspired with one another to illegally:

a)      Inflate JC Sons' invoices and submit those invoices to CapitalTristate for payment;

b)      Inflate Sibel Sales' invoices and submit those invoices to CapitalTristate for payment;

c)      Inflate Baltimore's Light Source's invoices and submit those invoices to CapitalTristate for payment;

d)      Create fake JC Sons invoices and credits and submit them to CapitalTristate for approval;

e)      Create fake Sibel Sales invoices and credits and submit them to CapitalTristate for approval;

f)      Create fake Baltimore's Light Source invoices and submit them to CapitalTristate for approval;

74

g)      Obtain and retain money for labor Ken Wirtz performed on CapitalTristate jobs even though he was a CapitalTristate employee and already was being compensated;

h)      Steal money from CapitalTristate by keeping money paid on fake and inflated invoices;

i)      Approve invoices from subcontractors, suppliers, brokers, and others that they knew to be fraudulent;

j)      Perpetrate frauds that permitted Ken Wirtz to obtain commissions on unrealized sales; and

k)      Conceal the fraud and wrongdoing by, among other things, engaging in the various schemes without CapitalTristate's knowledge or consent and manipulating CapitalTristate's accounts and records.

364.      The conspiring Defendants' unlawful, wrongful, and tortious acts, as set forth above, were done in furtherance of the conspiracy to commit a fraud against CapitalTristate.

365.      As more fully detailed above in this Complaint, Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, Volturno, MEKW, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith, as well as M.E.K., did, in fact, and without the consent or approval of Plaintiff CapitalTristate:

a)      Inflate JC Sons' invoices and submit those invoices to CapitalTristate for payment;

b)      Inflate Sibel Sales' invoices and submit those invoices to CapitalTristate for payment;

c)      Inflate Baltimore's Light Source invoices and submit those invoices to CapitalTristate for payment;

d)      Create fake JC Sons invoices and credits and submit them to CapitalTristate for approval;

e)      Create fake Sibel Sales invoices and credits and submit them to CapitalTristate for approval;

f)      Create fake Baltimore's Light Source invoices and submit them to CapitalTristate for approval;

g)      Obtain and retain money for labor Ken Wirtz performed on CapitalTristate jobs even though he was a CapitalTristate employee and already was being compensated;

h) Steal money from CapitalTristate by keeping money paid on fake and inflated invoices;

i) Approve invoices from subcontractors, suppliers, brokers, and others that they knew to be fraudulent;

j) Perpetrate frauds that permitted Ken Wirtz to obtain commissions on unrealized sales; and

k) Conceal the fraud and wrongdoing by, among other things, engaging in the various schemes without CapitalTristate's knowledge or consent and manipulating CapitalTristate's accounts and records.

366.    The conspiring Defendants' unlawful, wrongful, and tortious conduct done in furtherance of the conspiracy to defraud and otherwise injure CapitalTristate was done with actual malice, ill motive, and with the intent to injure CapitalTristate.

367.    As a result of Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, Volturno, MEKW, JC Sons, Baltimore's Light Source, Jeffrey Smith, Christine Smith, and M.E.K.'s conspiracy to defraud and otherwise injure CapitalTristate, Plaintiff CapitalTristate has suffered severe economic injury, including lost profits and other compensatory damages totaling not less than $6 million.

WHEREFORE, CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, Volturno, MEKW, JC Sons, Baltimore's Light Source, Jeffrey Smith, and Christine Smith jointly and severally liable for conspiracy;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just.

## COUNT XIX
## CIVIL CONSPIRACY
**(Against Ken Wirtz, AXIS, Adam Harmon, Todd Sibel,**
**Sibel Sales, Kristin Wirtz, and TK Lighting)**

368.    The allegations contained in paragraphs 1 through 367 are incorporated by reference as if fully set forth herein.

369.    Without the knowledge, consent, or approval of Plaintiff CapitalTristate, Defendants Ken Wirtz, AXIS, Adam Harmon, Todd Sibel, Sibel Sales, Kristin Wirtz, and TK Lighting entered into an agreement and/or understanding with one another and conspired with one another to illegally:

a)      Create an inflated price list for AXIS products sold to CapitalTristate;

b)      Inflate AXIS invoices and submit those invoices to CapitalTristate for payment;

c)      Order excess products from AXIS that were not needed for existing jobs; and

d)      Use and retain the payment of the inflated invoices and invoices on excess product as illegal kickbacks and commissions.

370.    The conspiring Defendants' unlawful, wrongful, and tortious acts, as set forth above, were done in furtherance of the conspiracy to commit a fraud against CapitalTristate, and otherwise injure CapitalTristate.

371.    As more fully detailed above, Defendants Ken Wirtz, AXIS, Adam Harmon, Todd Sibel, Sibel Sales, Kristin Wirtz, and TK Lighting did, in fact, and without the knowledge, consent, or approval of Plaintiff CapitalTristate:

a)      Create an inflated price list for AXIS products sold to CapitalTristate;

b)      Inflate AXIS invoices and submit those invoices to CapitalTristate for payment;

c)      Order excess products from AXIS that were not needed for existing jobs; and

d)      Use and retain the payment of the inflated invoices and invoices on excess products as illegal kickbacks and commissions.

372.    The conspiring Defendants' unlawful, wrongful, and tortious conduct done in furtherance of the conspiracy to defraud and otherwise injure CapitalTristate was done with actual malice, ill motive, and with the intent to injure CapitalTristate.

373.    As a result of Defendants Ken Wirtz, AXIS, Adam Harmon, Todd Sibel, Sibel Sales, Kristin Wirtz, and TK Lighting's conspiracy, Plaintiff CapitalTristate has suffered severe economic injury including lost profits and other compensatory damages totaling not less than $6 million.

WHEREFORE, CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and find Defendants Ken Wirtz, AXIS, Adam Harmon, Todd Sibel, Sibel Sales, Kristin Wirtz, and TK Lighting jointly and severally liable for conspiracy;

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award punitive damages in the amount of $20 million;

D.      Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just.

**COUNT XX**
**CIVIL CONSPIRACY**
**(Against Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting)**

374.    The allegations contained in paragraphs 1 through 373 are incorporated by reference as if fully set forth herein.

375.    Without the consent or approval of Plaintiff CapitalTristate, Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting entered into an agreement and/or understanding with one another and conspired with one another to illegally:

a)      Over-order products from manufacturers and suppliers for use in CapitalTristate projects and divert those excess products for use in TK Lighting jobs;

b)      Divert business and customers from CapitalTristate to TK Lighting; and

c)      Defraud CapitalTristate customers into paying TK Lighting for work performed by and supplies paid by CapitalTristate.

376.    The conspiring Defendants' unlawful and tortious acts, as set forth above, were done in furtherance of the conspiracy to commit a fraud against CapitalTristate, convert CapitalTristate's property, intentionally interfere with CapitalTristate's contractual relations, and otherwise injure CapitalTristate.

377.    As more fully detailed above, Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting did, in fact, and without the consent or approval of Plaintiff CapitalTristate:

a)      Over-order products from manufacturers and suppliers for use in CapitalTristate projects and divert those excess products for use in TK Lighting jobs;

b)      Divert business and customers from CapitalTristate to TK Lighting; and

c)      Defraud CapitalTristate customers into paying TK Lighting for work performed by and supplies paid by CapitalTristate.

378.    The conspiring Defendants' unlawful, wrongful, and tortious conduct done in furtherance of the conspiracy to defraud CapitalTristate, convert CapitalTristate's property, intentionally interfere with CapitalTristate's contractual relations, and otherwise injure CapitalTristate, was done with actual malice, ill motive, and with the intent to injure CapitalTristate.

379.    As a result of Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting's conspiracy, Plaintiff CapitalTristate has suffered severe economic injury including lost sales, lost profits, and other compensatory damages totaling not less than $6 million.

WHEREFORE, CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, and TK Lighting jointly and severally liable for conspiracy.

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just.

## COUNT XXI
## CIVIL CONSPIRACY
### (Against All Defendants)

380.    The allegations contained in paragraphs 1 through 379 are incorporated by reference as if fully set forth herein.

381.    Without the consent or approval of Plaintiff CapitalTristate, Defendants entered into an agreement and/or understanding with one another and conspired with one another to illegally charge, invoice, collect, and retain money from Plaintiff CapitalTristate.

382.    The conspiring Defendants' unlawful, wrongful, and tortious acts, as set forth above, were done in furtherance of the conspiracy to commit a fraud against CapitalTristate, convert CapitalTristate's property, and otherwise injure CapitalTristate.

383.    As more fully detailed above, Defendants did, in fact, and without the consent or approval of Plaintiff CapitalTristate charge, invoice, collect, and retain money from Plaintiff CapitalTristate.

384.    The conspiring Defendants' unlawful, wrongful, and tortious conduct done in furtherance of the conspiracy to defraud CapitalTristate, convert CapitalTristate's property, and otherwise injure CapitalTristate, was done with actual malice, ill motive, and with the intent to injure CapitalTristate.

385.    As a result of Defendants' conspiracy, Plaintiff CapitalTristate has suffered severe economic injury including lost sales, lost profits, and other compensatory damages.

WHEREFORE, CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Defendants jointly and severally liable for conspiracy.

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just.

## COUNT XXII
## AIDING AND ABETTING
### (Against Defendants JC Sons, Jeffrey Smith and Christine Smith)

386.    The allegations contained in paragraphs 1 through 385 are incorporated by reference as if fully set forth herein.

387.    Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, and Volturno intentionally created fictitious JC Sons invoices and submitted those invoices to CapitalTristate for payment to JC Sons.

388.    JC Sons, Jeffrey Smith, and Christine Smith had knowledge that the JC Sons invoices were fictitious and that payment by CapitalTristate on those invoices was induced by the fraudulent nature of the invoices.

389.    JC Sons, Jeffrey Smith, and Christine Smith aided, abetted, and encouraged the fraudulent and tortious invoicing and payment scheme perpetrated by Defendants Ken Wirtz, Kirsten Wirtz, Todd Sibel, Sibel Sales, and Volturno, and knowingly provided substantial assistance, aid, and encouragement in the commission of such conduct by unlawfully accepting payment on the fraudulent invoices and distributing such payment to Defendants Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, and Volturno.

390.    JC Sons, Jeffrey Smith, and Christine Smith's conduct as set forth above was done with actual malice, ill motive, and with the intent to injure CapitalTristate.

391.    As a result of Defendants JC Sons, Jeffrey Smith, and Christine Smith's malicious aiding and abetting of Ken Wirtz, Kristen Wirtz, Todd Sibel, Sibel Sales, and Volturno's tortious conduct, CapitalTristate suffered severe economic injury, including lost profits and other compensatory damages.

WHEREFORE, CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Defendants JC Sons, Jeffrey Smith, and Christine Smith jointly and severally liable for aiding and abetting;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XXIII
## RESPONDEAT SUPERIOR
### (Against Defendant Sibel Sales)

392.    The allegations contained in paragraphs 1 through 391 are incorporated by reference as if fully set forth herein.

393.    At all relevant times, Todd Sibel was employed by Sibel Sales and was the owner and primary operator of Sibel Sales.

394.    Todd Sibel was under the direct supervision, employ, and control of Sibel Sales when he engaged in the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation and implementation of the schemes to inflate JC Sons and Sibel Sales invoices, the creation of fictitious JC Sons and Sibel Sales invoices, the creation and implementation of the illegal kickback schemes, the receipt and retention of funds obtained by the wrongful conduct, the distribution of kickbacks, and the conspiracy to commit those acts.

395.    At all relevant times, Sibel Sales granted Todd Sibel authority to perform as an agent within the company.  Sibel Sales also held Todd Sibel out to the community as a fit and competent agent of Sibel Sales.

396.    Todd Sibel committed the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation and implementation of the schemes to inflate JC Sons and Sibel Sales invoices, the creation of fictitious JC Sons and Sibel Sales invoices, the creation and implementation of the illegal kickback schemes, the receipt and retention of funds obtained by the wrongful conduct, the distribution of kickbacks, and the conspiracy to commit those acts with the actual and/or apparent authority of Sibel Sales.

397.    Todd Sibel's conduct described herein was committed in the scope of his employment with Sibel Sales, was conducted during normal business hours at Sibel Sales' place of business, and company supplies, such as its computers, were used to effectuate the wrongful conduct and scheme.

398.    Todd Sibel was acting, at least in part, to serve the interests of Sibel Sales when he committed the acts alleged in this Complaint including, but not limited to, the creation and implementation of the schemes to inflate JC Sons and Sibel Sales invoices, the creation of fictitious JC Sons and Sibel Sales invoices, the creation and implementation of the illegal kickback schemes, the receipt and retention of funds obtained by the wrongful conduct, the distribution of kickbacks, and the conspiracy to commit those acts.

399.    Sibel Sales ratified Todd Sibel's conduct and acts including, but not limited to, the creation and implementation of the schemes to inflate JC Sons and Sibel Sales invoices, the creation of fictitious JC Sons and Sibel Sales invoices, the creation and implementation of the

illegal kickback schemes, the receipt and retention of funds obtained by the wrongful conduct, the distribution of kickbacks, and the conspiracy to commit those acts.

400.    As Todd Sibel's employer, Sibel Sales is responsible for all the acts committed by Todd Sibel within the scope of his employment including, but not limited to, the creation and implementation of the schemes to inflate JC Sons and Sibel Sales invoices, the creation of fictitious JC Sons and Sibel Sales invoices, the creation and implementation of the illegal kickback schemes, the receipt and retention of funds obtained by the wrongful conduct, the distribution of kickbacks, and the conspiracy to commit those acts as set forth in Counts I-VI, IX, and XIII-XXI and XXXI.

WHEREFORE CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find against Sibel Sales and find Sibel Sales liable for the wrongful conduct of Todd Sibel committed within the scope of his employment;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

### COUNT XXIV
### RESPONDEAT SUPERIOR
### (Against Defendant Volturno)

401.    The allegations contained in paragraphs 1 through 400 are incorporated by reference as if fully set forth herein.

402.    At all relevant times, Todd Sibel was employed by Volturno, and was the owner and primary operator of Volturno.

403.     Todd Sibel was under the direct supervision, employ, and control of Volturno when he engaged in the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the scheme to create fictitious and inflated JC Sons invoices, and the conspiracy to commit those acts.

404.     At all relevant times, Volturno granted Todd Sibel authority to perform as an agent within the company.  Volturno also held Todd Sibel out to the community as a fit and competent agent of Volturno.

405.     Todd Sibel committed the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the scheme to create fictitious and inflated JC Sons invoices, and the conspiracy to commit those acts with actual and/or apparent authority from Volturno.

406.     Todd Sibel's conduct as described herein was committed in the scope of his employment with Volturno, was conducted during normal business hours at Volturno's place of business, and company supplies, such as its computers, were used to effectuate the wrongful conduct and scheme.

407.     Todd Sibel was acting, at least in part, to serve the interests of Volturno when he committed the acts alleged in this Complaint including, but not limited to, the scheme to create fictitious and inflated JC Sons invoices, and the conspiracy to commit those acts.

408.     Volturno ratified Todd Sibel's conduct and acts including, but not limited to, the scheme to create fictitious and inflated JC Sons invoices, and the conspiracy to commit those acts.

409.     As Todd Sibel's employer, Volturno is responsible for all the acts committed by Todd Sibel within the scope of his employment including, but not limited to, the scheme to create

fictitious and inflated JC Sons invoices, and the conspiracy to commit those acts as set forth in Counts Counts I-VI, IX, and XIII-XXI and XXXI.

WHEREFORE CapitalTristate respectfully requests:

A.   That the Court enter judgment in CapitalTristate's favor, and find against Volturno and find Volturno liable for the wrongful conduct of Todd Sibel committed within the scope of his employment;

B.   Award compensatory damages in an amount to be proven at trial;

C.   Award punitive damages in the amount of $20 million;

D.   Award prejudgment and post judgment interest;

E.   Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.   Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XXV
## RESPONDEAT SUPERIOR
### (Against Defendant AXIS)

410.   The allegations contained in paragraphs 1 through 409 are incorporated by reference as if fully set forth herein.

411.   At all relevant times, Adam Harmon was employed by AXIS, and was an agent and director of AXIS.

412.   Adam Harmon was under the direct supervision, employ, and control of AXIS when he engaged in the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation of an inflated price list, the creation of inflated invoices, and the creation and implementation of the illegal kickback scheme with Todd Sibel, Kristen Wirtz, TK Lighting, and Ken Wirtz, and the conspiracy to commit those acts.

413.    At all relevant times, AXIS granted Adam Harmon authority to perform as an agent within the company.  AXIS also held Adam Harmon out to the community as a fit and competent agent of AXIS.

414.    Adam Harmon committed the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation of an inflated price list, the creation of inflated invoices, the creation and implementation of the illegal kickback scheme with Todd Sibel, Kristen Wirtz, TK Lighting, and Ken Wirtz, and the conspiracy to commit those acts with the actual and/or apparent authority of AXIS.

415.    Adam Harmon's conduct described herein was committed in the scope of his employment with AXIS, was conducted during normal business hours at AXIS's place of business, and company supplies, such as its pricing lists, invoices, and computers were used to effectuate the wrongful conduct.

416.    Adam Harmon was acting, at least in part, to serve the interests of AXIS when he committed the acts alleged in this Complaint.

417.    AXIS ratified Adam Harmon's conduct and acts, including, but not limited to, the creation of an inflated price list, the creation of inflated invoices, and the creation and implementation of the illegal kickback scheme with Todd Sibel, Kristen Wirtz, TK Lighting, and Ken Wirtz, and the conspiracy to commit those acts.

418.    As Adam Harmon's employer, AXIS is responsible for all the acts committed by Adam Harmon within the scope of his employment including, but not limited to, the creation of the inflated price list, the creation of inflated invoices, the creation and implementation of the illegal kickback scheme with Todd Sibel, Kristen Wirtz, TK Lighting, and Ken Wirtz, and the conspiracy to commit those acts as set forth in Counts II, V, IX, XIV-XVI, XIX, XXI and XXXI.

WHEREFORE CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and find AXIS liable for the wrongful conduct of Adam Harmon committed within the scope of his employment;

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award punitive damages in the amount of $20 million;

D.      Award prejudgment and post judgment interest;

E.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.      Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XXVI
## RESPONDEAT SUPERIOR
### (Against Defendant TK Lighting)

419.    The allegations contained in paragraphs 1 through 418 are incorporated by reference as if fully set forth herein.

420.    At all relevant times, Todd Sibel and Kristen Wirtz were employed by TK Lighting and were agents of TK Lighting.

421.    Todd Sibel and Kristen Wirtz were under the direct supervision, employ, and control of TK Lighting when they were engaged in the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation and implementation of the kickback scheme with AXIS and Adam Harmon, the wrongful diversion of CapitalTristate's customers, the theft and use of CapitalTristate's products on TK Lighting jobs, the scheme to divert payments of CapitalTristate's jobs to TK Lighting, and the conspiracy to commit those acts.

422.    At all relevant times, TK Lighting granted Todd Sibel and Kristen Wirtz authority to perform as agents within the company.  TK Lighting also held Todd Sibel and Kristen Wirtz out to the community as fit and competent agents of TK Lighting.

423.    Todd Sibel and Kristen Wirtz committed the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation and implementation of the kickback scheme with AXIS and Adam Harmon, the wrongful diversion of CapitalTristate's customers, the theft and use of CapitalTristate's products on TK Lighting jobs, the scheme to divert payments of CapitalTristate's jobs to TK Lighting, and the conspiracy to commit those acts with the actual and/or apparent authority from TK Lighting.

424.    Todd Sibel and Kristen Wirtz's conduct (as set forth above and more fully in this Complaint) was committed within the scope of their employment by TK Lighting, was conducted during normal business hours at TK Lighting's place of business, and company supplies, such as invoices and computers, were used to effectuate the conduct.

425.    Todd Sibel and Kristen Wirtz were acting, at least in part, to serve the interests of TK Lighting when they committed the acts alleged in this Complaint including, but not limited to, the creation and implementation of the kickback scheme with AXIS and Adam Harmon, the wrongful diversion of CapitalTristate's customers, the theft and use of CapitalTristate's products on TK Lighting jobs, the scheme to divert payments of CapitalTristate's jobs to TK Lighting, and the conspiracy to commit those acts.

426.    TK Lighting ratified Todd Sibel and Kristen Wirtz's conduct and acts as set forth in the Complaint, including, but not limited to, the creation and implementation of the kickback scheme with AXIS and Adam Harmon, the wrongful diversion of CapitalTristate's customers, the theft and use of CapitalTristate's products on TK Lighting jobs, the scheme to divert payments of CapitalTristate's jobs to TK Lighting, and the conspiracy to commit those acts.

427.    As Todd Sibel and Kristen Wirtz' employer, TK Lighting is responsible for all of the acts committed by Todd Sibel and Kristen Wirtz within the scope of their employment

including, but not limited to, the creation and implementation of the kickback scheme with AXIS and Adam Harmon, the wrongful diversion of CapitalTristate's customers, the theft and use of CapitalTristate's products on TK Lighting jobs, the scheme to divert payments of CapitalTristate's jobs to TK Lighting, and the conspiracy to commit those acts as set forth in Counts I-VI, IX, and XIII-XXI and XXXI.

WHEREFORE CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find TK Lighting liable for the wrongful conduct of Todd Sibel and Kristen Wirtz committed within the scope of their employment;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XXVII
## RESPONDEAT SUPERIOR
### (Against Defendant JC Sons)

428.    The allegations contained in paragraphs 1 through 427 are incorporated by reference as if fully set forth herein.

429.    At all relevant times, Jeffrey Smith and Christine Smith were employed by JC Sons and were agents of JC Sons.

430.    Jeffrey Smith and Christine Smith were under the direct supervision, employ, and control of JC Sons when they were engaged in the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation of fictitious invoices, the

receipt and retention of funds obtained by the wrongful conduct, the distribution of illegal kickbacks, and the conspiracy to commit those acts.

431.    At all relevant times, JC Sons granted Jeffrey Smith and Christine Smith authority to perform as agents within the company.  JC Sons also held Jeffrey Smith and Christine Smith out to the community as fit and competent agents of JC Sons.

432.    Jeffrey Smith and Christine Smith committed the wrongful, fraudulent, and negligent acts described in this Complaint including, but not limited to, the creation of fictitious invoices, the receipt and retention of funds obtained by wrongful conduct, the distribution of illegal kickbacks, and the conspiracy to commit those acts, with the actual and/or apparent authority from JC Sons.

433.    Jeffrey Smith and Christine Smith's conduct was committed within the scope of their employment with JC Sons, was conducted during normal business hours at JC Son's place of business, and company supplies, such as its invoices and computers, were used to effectuate the wrongful acts.

434.    Jeffrey Smith and Christine Smith were acting, at least in part, to serve the interests of JC Sons when they committed the acts alleged in this Complaint including, but not limited to, the creation of fictitious invoices, the receipt and retention of funds obtained by wrongful conduct, the distribution of illegal kickbacks, and the conspiracy to commit those acts.

435.    As Jeffrey Smith and Christine Smith's employer, JC Sons is responsible for all the acts committed by Jeffrey Smith and Christine Smith within the scope of their employment including, but not limited to, the creation of fictitious invoices, the receipt and retention of funds obtained by wrongful conduct, the distribution of illegal kickbacks, and the conspiracy to commit those acts as set forth in Counts I, IV, IX, XIV-XVI, XVIII, XXI-XXII, and XXXI.

WHEREFORE CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find JC Sons liable for the wrongful conduct of Jeffrey Smith and Christine Smith committed within the scope of their employment;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XXVIII
## RESPONDEAT SUPERIOR
### (Against Defendant MEKW)

436.    The allegations contained in paragraphs 1 through 435 are incorporated by reference as if fully set forth herein.

437.    At all relevant times, Kristen Wirtz was employed by MEKW and was the owner and primary operator of MEKW.

438.    Kristen Wirtz was under the direct supervision, employ, and control of MEKW when she engaged in the wrongful, fraudulent, and negligent acts described in this Complaint, including using MEKW to create fake invoices and funnel kickbacks to Ken Wirtz, Todd Sibel, and herself.

439.    At all relevant times, MEKW granted Kristen Wirtz authority to perform as an agent within the company.  MEKW also held Kristen Wirtz out to the community as a fit and competent agent of MEKW.

440.    Kristen Wirtz committed the wrongful, fraudulent, and negligent acts described in this Complaint, including the creation of fictitious invoices, the receipt and retention of funds

obtained by the wrongful conduct the distribution of kickbacks, and the conspiracy to commit those acts, with the actual and/or apparent authority from MEKW.

441.    Kristen Wirtz's conduct was committed within the scope of her employment with MEKW.

442.    Kristen Wirtz was acting, at least in part, to serve the interests of MEKW when she committed the acts alleged in this Complaint.

443.    MEKW ratified Kristen Wirtz's conduct and acts, specifically, the creation of fictitious invoices, the receipt and retention of funds obtained by the wrongful conduct, the distribution of kickbacks, and the conspiracy to commit those acts.

444.    As Kristen Wirtz' employer, MEKW is responsible for all the acts committed by Kristen Wirtz within the scope of her employment with MEKW, including the creation of fictitious invoices, the receipt and retention of funds obtained by the wrongful conduct, the distribution of kickbacks, and the conspiracy to commit those acts as set forth in Counts I-VI, IX, XIII-XXI, and XXXI.

WHEREFORE CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find MEKW liable for the wrongful conduct of Kristin Wirtz committed within the scope of her employment;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award punitive damages in the amount of $20 million;

D.    Award prejudgment and post judgment interest;

E.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.    Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

**COUNT XXIX**
**RESPONDEAT SUPERIOR**
**(Against Defendant Baltimore's Light Source)**

445.    The allegations contained in paragraphs 1 through 444 are incorporated by reference as if fully set forth herein.

446.    At all relevant times, Jeffrey Smith and Christine Smith were employed by Baltimore's Light Source and were owners and agents of Baltimore's Light Source.

447.    Jeffrey Smith and Christine Smith were under the direct supervision, employ, and control of Baltimore's Light Source when they were engaged in the wrongful, fraudulent, and negligent acts described in this Complaint.

448.    At all relevant times, Baltimore's Light Source granted Jeffrey Smith and Christine Smith authority to perform as the company's agents.

449.    Baltimore's Light Source also held Jeffrey Smith and Christine Smith out to the community as fit and competent agents of Baltimore's Light Source.

450.    Jeffrey Smith and Christine Smith committed the wrongful, fraudulent, and negligent acts described in this Complaint with the actual and/or apparent authority arising from Baltimore's Light Source.

451.    Jeffrey Smith and Christine's conduct was committed within the scope of Jeffrey Smith and Christine Smith's employment, was conducted during normal business hours at Baltimore's Light Source's place of business, and company supplies, such as its invoices and computers, were used to effectuate the conspiracy and conduct the wrongful acts.

452.    Jeffrey Smith and Christine Smith were acting, at least in part, to serve the interests of their employer Baltimore's Light Source when they committed the acts alleged in this Complaint.

453.    Baltimore's Light Source ratified Jeffrey Smith and Christine Smith's conduct and acts.

454.    As Jeffrey Smith and Christine Smith's employer, Baltimore's Light Source is responsible for all the acts committed by Jeffrey Smith and Christine Smith within the scope of their employment, including the conduct as set forth in Counts I, IV, IX, XIV-XVI, XVIII, XXI-XXII, and XXXI.

WHEREFORE CapitalTristate respectfully requests:

A.     That the Court enter judgment in CapitalTristate's favor, and find Baltimore's Light Source liable for the wrongful conduct of Jeffrey Smith and Christine Smith committed within the scope of their employment;

B.     Award compensatory damages in an amount to be proven at trial;

C.     Award punitive damages in the amount of $20 million;

D.     Award prejudgment and post judgment interest;

E.     Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

F.     Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XXX
## BREACH OF CONTRACT
### (Against Ken Wirtz)

455.    The allegations contained in paragraphs 1 through 454 are incorporated by reference as if fully set forth herein.

456.    On August 14, 2006, CapitalTristate hired Defendant Ken Wirtz.  On that date, Plaintiff CapitalTristate and Defendant Ken Wirtz entered into an employment contract, wherein for a pre-agreed upon salary, Ken Wirtz would serve as an Account Manager in CapitalTristate's EMS division.

457.    Pursuant to the employment contract and Ken Wirtz's duties as an Account Manager, Ken Wirtz owed CapitalTristate a duty to perform his job honestly and faithfully for the benefit of the company, and without any self-interest or self-dealing.

458.    Ken Wirtz was obligated not to commit fraud against or steal from the company or cover-up the fraud or theft.

459.    Ken Wirtz materially breached his contractual and fiduciary duties to CapitalTristate when, for his sole benefit and for his own self-interest, and to CapitalTristate's substantial detriment, Ken Wirtz committed the wrongful acts contained in this Complaint, including but not limited to, when he committed fraud and stole from CapitalTristate.

460.    As a direct and proximate result of Ken Wirtz's breaches arising out of his employment contract, CapitalTristate sustained damages in an amount no less than $6 million.

WHEREFORE CapitalTristate respectfully requests:

A.      That the Court enter judgment in CapitalTristate's favor, and find Ken Wirtz liable for breach of contract;

B.      Award compensatory damages in an amount to be proven at trial;

C.      Award prejudgment and post judgment interest;

D.      Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

E.      Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

## COUNT XXXI
## NEGLIGENCE
### (Against All Defendants)

461.    The allegations contained in paragraphs 1 through 460 are incorporated by reference as if fully set forth herein.

462.    At all times relevant to this Complaint, Defendants, as either CapitalTristate's employee, broker, subcontractor, or supplier, had a duty to exercise reasonable care and diligence in their business relationships, transactions, and dealings with Plaintiff.  Defendants had a legal obligation to conduct their business relationships, transactions, and dealings in a manner that would not harm Plaintiff.

463.    As set forth in detail in this Complaint, and in particular as detailed in paragraphs 45-167, Defendants have breached that duty, and acted negligently, by failing to conduct their business relationships, transactions, and dealings with Plaintiff in a reasonable and diligent manner.

464.    As a direct and proximate cause of Defendants' breaches and negligent conduct, Plaintiff CapitalTristate has suffered and will continue to suffer lost profits, consequential damages, and damages to its reputation.

WHEREFORE, CapitalTristate respectfully requests:

A.    That the Court enter judgment in CapitalTristate's favor, and find Defendants jointly and severally liable for negligence;

B.    Award compensatory damages in an amount to be proven at trial;

C.    Award prejudgment and post judgment interest;

D.    Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

E.    Award such other and further relief as the nature of the cause requires and the Court deems just.

## JURY DEMAND

CapitalTristate demands a trial by jury with respect to all the claims set forth in this Complaint.

## PRAYERS FOR RELIEF

Based on the foregoing, CapitalTristate prays that the Court enter judgment awarding the following:

A.   That the Court enter judgment in CapitalTristate's favor, and find against Defendants on all claims;

B.   Award compensatory damages in an amount to be proven at trial, but not less than $6 million;

C.   Award treble damages on the RICO claims;

D.   Award punitive damages;

E.   Award prejudgment and post judgment interest;

F.   Award CapitalTristate its reasonable attorneys' fees and the costs of these proceedings; and

G.   Award such other and further relief as the nature of the cause requires and the Court deems just and proper.

Respectfully submitted,

*/s/ Cheryl Zak Lardieri*
K. Nichole Nesbitt (Federal Bar #: 26137)
Cheryl Zak Lardieri (Federal Bar #: 25101)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
knn@gdldlaw.com
clardieri@gdldlaw.com
Phone: (410) 783-4000
Fax: (410) 783-4040

*Attorneys for Plaintiff Capital Lighting & Supply, LLC d/b/a CapitalTristate*

4850-9066-7865, v. 1

99